Nicholas P. Roxborough
(State Bar No. 113540)
npr@rpnalaw.com
David R. Ginsburg
(State Bar No. 210900)
drg@rpnalaw.com
Joseph C. Gjonola
(State Bar No. 241955)
jcg@rpnalaw.com
Members of **ROXBOROUGH,**
   **POMERANCE, NYE &**
   **ADREANI, LLP**
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone:  (818) 992-9999
Facsimile:  (818) 992-9991

Attorneys for Defendant and Counterclaimant
First Rate Staffing Corporation

## THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

## DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>FIRST RATE STAFFING CORPORATION, et al.,<br><br>Defendants.<br>_____<br>FIRST RATE STAFFING CORPORATION,<br><br>Counterclaimant,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS<br><br>Counter-Defendant. | Case No. 2:17-cv-4864-CAS(KSx)<br><br>**DECLARATION OF JOSEPH C. GJONOLA IN SUPPORT OF EX PARTE APPLICATION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM AND CONTINUE THE TRIAL**<br><br>COURTROOM:  8D<br><br>HON. CHRISTINA A. SNYDER |

# DECLARATION OF JOSEPH C. GJONOLA

I, JOSEPH C. GJONOLA, declare as follows:

1.     I am an attorney at law duly licensed to practice before the Courts of the State of California.  I am a partner with the law firm of Roxborough, Pomerance, Nye & Adreani, LLP, attorneys of record for Defendant First Rate Staffing Corporation ("First Rate" or "Defendant") in this action.  The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.     Attached hereto as Exhibit "1" is First Rate's proposed Second Amended Answer and Counterclaim.

3.     On March 30, 2018, I sent the Second Amended Answer and Counterclaim to Lincoln V. Horton, counsel for Plaintiff, Zurich American Insurance Company of Illinois ("Zurich") and asked that Zurich stipulate to its filing.  Counsel refused by email sent after 5pm on April 3, 2018, a true and correct copy of which is attached as Exhibit "2".

4.     On April 3, 2018, I advised counsel for Zurich that this ex parte request would be made to this Court and that Zurich will have 48 hours from service of this application to file its opposition.  Zurich's counsel responded by email that Zurich would oppose the application.  A true and correct copy of that email exchange is attached as Exhibit "3".

5.     Attached hereto as Exhibit "4" is a true and correct copy of the Court's original Scheduling Order of October 30, 2017.  Attached hereto as Exhibit "5" is a true and correct copy of the Order Continuing Certain Scheduling Order Dates of January 26, 2018.

6.     Beginning in November 2017, my associates and I spent time reviewing Zurich's initial disclosures and performing investigations of the documents and surrounding events, and propounding written discovery.  This work product resulted

1

DECLARATION OF JOSEPH C. GJONOLA IN SUPPORT OF EX PARTE APPLICATION FOR
LEAVE TO AMEND ANSWER AND COUNTERCLAIM AND CONTINUE THE TRIAL

1    in the conclusion that Zurich had not produced all of the relevant documents,

2    particularly its underwriting documents for First Rate, including the Schedule Rating

3    Work Sheets.  These should have been produced or identified in Zurich's initial

4    disclosures, because they are foundational to Zurich's calculation of and claim for past

5    due premium.  These documents became the subject of document requests.  But the

6    documents were not produced until about March 2, 2018, a day or two before the

7    depositions of Zurich employees in the first week of March, 2018.

8          7.     On December 21, 2017 I sent an email to Lincoln Horton attempting to

9    schedule a settlement conference in late January or early February 2018, and continue

10    dates for the expert reports and discovery cut-off.  A true and correct copy of that

11    email exchange is attached hereto as Exhibit "6" page 2.  I had already sent an email

12    to Magistrate Stevenson's Courtroom Deputy Clerk to gather available dates, on

13    December 18, 2018.  A true and correct copy of that email exchange with the Deputy

14    Clerk is attached hereto as Exhibit "7".

15          8.     However, by the time Zurich responded on December 27, 2018 (Exhibit

16    "6" page 1.), and schedules were cleared, the Magistrate had no dates available before

17    March 20, 2017.  A true and correct copy of that email exchange with the Deputy

18    Clerk is attached hereto as Exhibit "8".

19          9.     After Zurich deposed all of the First Rate witnesses it desired to depose

20    in the last week of January and first week of February, 2018, the depositions of

21    Zurich's witnesses were repeatedly delayed because Zurich stalled the production of

22    requested documents.  I complained to Zurich's counsel by email on March 1, 2018

23    after having to postpone the depositions a third time, because Zurich would not

24    produce the documents necessary for the depositions.  Those included the

25    underwriting documents, including the Schedule Rating Worksheets.  A true and

26    correct copy of that March 1, 2018 email is attached hereto as Exhibit "9".

27          10.    Following the depositions of Zurich's employees, taken by David R.

28

DECLARATION OF JOSEPH C. GJONOLA IN SUPPORT OF EX PARTE APPLICATION FOR
LEAVE TO AMEND ANSWER AND COUNTERCLAIM AND CONTINUE THE TRIAL

1   Ginsburg, Esq. of my office from March 5 – 9, 2018, First Rate immediately focused

2   on preparing for the March 20, 2018 Settlement Conference with Magistrate Judge

3   Stevenson.  First Rate had to prepare a Settlement Conference Statement and

4   Confidential Addendum for Magistrate Stevenson.  First Rate did its best to digest the

5   new facts and include them in the Settlement Conference so as to present Zurich with

6   an honest assessment of its exposure to First Rate for violating its own California rate

7   filings.

8       11.     In the week prior to the March 20, 2018 Settlement Conference, I

9   engaged in additional work product to further determine the effect of the new

10   information that First Rate discovered through the recent depositions.  I also began

11   amending First Rate's answer and counterclaims in the event the case did not settle.

12       12.     Ever since the fruitless March 20, 2018 Settlement Conference, David R.

13   Ginsburg, Esq. and I have been working with experts to assist First Rate and testify on

14   its behalf.  All expert work has had to be performed between March 20, 2018 and

15   April 16, 2018, when the experts' reports are due to be exchanged.  No expert work

16   was performed prior to the Settlement Conference.  As explained to the Court in the

17   parties' Joint Stipulation For Continuance Of Certain Scheduling Order Dates,

18   "settlement will be much more likely before the parties incurring (sic) large expenses

19   to retain experts, produce reports, and take [expert] depositions."  See Page 2, lines 2-

20   3 of the Stipulation, a true and correct copy of which is attached as Exhibit "10".  That

21   statement accurately reflects the conversations and agreement between the parties'

22   counsel concerning the best way to reach a settlement of the case.

23       13.     Amid engaging and working with experts, I completed a draft of the

24   Second Amended Answer and Counterclaim and emailed it to Zurich's Counsel on

25   March 30, 2018, with a request that Zurich stipulate to its filing and a trial

26   continuance.  At true and correct copy of that email communication, sans attachment,

27   is attached as Exhibit "2" bottom of page 2.  Zurich's counsel failed to respond to

28

3

1    multiple requests to stipulate until almost 6pm, April 3, 2018 (Exh. "2" page 1), and

2    only after First Rate sent a notice of this ex parte application (Exh. "3" page 1).

3        14.      I have spent that past week continuing my work with multiple experts,

4    drafting this application, and responding to additional discovery sets that were

5    propounded by Zurich on March 24, 2018, right after the Settlement Conference.

6

7

8        I declare under penalty of perjury under the laws of the State of California that

9    the foregoing is true and correct and that this declaration is executed on April 6, 2018,

10    in the City of Woodland Hills, State of California.

11

12

13                   */s/ Joseph C. Gjonola*

14                   JOSEPH C. GJONOLA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOSEPH C. GJONOLA IN SUPPORT OF EX PARTE APPLICATION FOR
LEAVE TO AMEND ANSWER AND COUNTERCLAIM AND CONTINUE THE TRIAL

# EXHIBIT 1

1   Nicholas P. Roxborough
    (State Bar No. 113540)
2   npr@rpnalaw.com
    David R. Ginsburg
3   (State Bar No. 210900)
    drg@rpnalaw.com
4   Joseph C. Gjonola
    (State Bar No. 241955)
5   jcg@rpnalaw.com
    Members of **ROXBOROUGH,**
6       **POMERANCE, NYE &**
        **ADREANI, LLP**
7   5820 Canoga Avenue, Suite 250
    Woodland Hills, California 91367
8   Telephone:  (818) 992-9999
    Facsimile:   (818) 992-9991
9

10  Attorneys for Defendant and Counterclaimant First Rate Staffing
    Corporation
11

12          **THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

13          **DISTRICT OF CALIFORNIA — WESTERN DIVISION**

14  ZURICH AMERICAN INSURANCE )    Case No. 2:17-cv-4864-CAS(KSx)
    COMPANY OF ILLINOIS,        )
15                              )   Second Amended Answer,
            Plaintiff,          )   Counterclaim, and Demand for Jury
16                              )   Trial
            v.                  )
17                              )
    FIRST RATE STAFFING         )
18  CORPORATION, et al.,        )
                                )
19          Defendants.         )
                                )
20  ─────────────────────────  )
                                )
21  FIRST RATE STAFFING         )
    CORPORATION,                )
22                              )
            Counterclaimant,    )
23                              )
            v.                  )
24                              )
    ZURICH AMERICAN INSURANCE   )
25  COMPANY OF ILLINOIS, ZURICH )
    NORTH AMERICA, and WORLD    )
26  WIDE SPECIALTY PROGRAMS,    )
    INC.                        )
27                              )
            Counter-defendant.  )
28  ─────────────────────────

## SECOND AMENDED ANSWER

Defendant First Rate Staffing Corporation ("First Rate") answers the complaint as follows:

### Admissions and Denials

1. Answering paragraph 1 of the complaint, First Rate admits the allegations therein.

2. Answering paragraph 2 of the complaint, First Rate admits the allegations therein.

3. Answering paragraph 3 of the complaint, First Rate admits the allegations therein.

4. Answering paragraph 4 of the complaint, First Rate is without sufficient knowledge or information to form a belief as to the allegation contained therein, and, on that basis, denies that allegation.

5. Answering paragraph 5 of the complaint, First Rate is without sufficient knowledge or information to form a belief as to the allegation contained therein, and, on that basis, denies that allegation.

6. Answering paragraph 6 of the complaint, First Rate is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) whether, at any time mentioned in the complaint, First Rate was ever the agent of any of the other Defendants; (b) whether, at any time mentioned in the complaint, any of the other Defendants was the agent, servant, or employee of any of the other Defendants, and at the same time and place of the alleged events described in the complaint, was acting within the course and scope of said agency and employment with the permission and consent of any of the other Defendants; (c) whether any of the other Defendants is the alter ego of any of the other Defendants; and (d) whether any of the other Defendants is, essentially, the extension of any of the other Defendants. Except as denied on the basis of insufficient knowledge or information to form a belief, First Rate denies each and

1

1    every allegation in paragraph 6 of the complaint.

2         7.    Answering paragraph 7 of the complaint, First Rate admits that: (a) it

3    purchased a workers' compensation insurance policy bearing the policy number WC

4    9491028-02 from Zurich American Insurance Company of Illinois ("Zurich"), and

5    that policy was issued to First Rate by Zurich; (b) the workers' compensation

6    insurance policy bearing the number WC 9491028-02 (the "Agreement") covers the

7    policy period May 7, 2014 to May 7, 2015; (c) one of the endorsements to the

8    Agreement states, in part: "The premium shown on the Information Page, schedules,

9    and endorsements is an estimate. The final premium will be determined after this

10   policy ends by using the actual, not the estimated, premium basis and the proper

11   classifications and rates that lawfully apply to the business and work covered by this

12   policy. If the final premium is more than the premium [First Rate] paid to [Zurich],

13   [First Rate] must pay [Zurich] the balance. If it is less, [Zurich] will refund the

14   balance to [First Rate]."; (d) another of the endorsements to the Agreement states:

15   "[First Rate] must provide [Zurich], or [Zurich's] authorized representative, access

16   to records necessary to perform a payroll verification audit. If [First Rate] fail[s] to

17   provide access within 90 days after expiration of the policy, [First Rate] [is] liable to

18   pay a total premium equal to 3 times [Zurich's] current estimate of the annual

19   premium for [First Rate's] policy. In addition, if [First Rate] fail[s] to provide access

20   after [Zurich's] third request within a 90 day or longer period, [First Rate] [is] also

21   liable for [Zurich's] costs in attempting to perform the audit unless [First Rate]

22   provide[s] a compelling business reason for [its] failure. [¶] [Zurich] will contact

23   [First Rate] to schedule appointments during normal business hours. [¶] [Zurich]

24   will notify [First Rate] of [First Rate's] failure to provide access by mailing a

25   certified, return-receipt document stating the increased premium and the total

26   amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In

27   addition to any other obligations under this contract, 30 days after you receive the

28   notification, [First Rate] will be obligated to pay the total premium and costs

1    referenced above. If, thereafter, [First Rate] provide[s] access to [First Rate's]

2    records within three years after the policy expires, or within another mutually agreed

3    upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction,

4    [Zurich] will revise [First Rate's] total premium and the costs due to reflect the

5    results of the audit."; and (e) among other things, a copy of the Agreement is

6    attached to the complaint as Exhibit A. Except as so admitted, First Rate is without

7    sufficient knowledge or information to form a belief as to the truth of the remaining

8    allegations contained in paragraph 7, and, on that basis, First Rate denies those

9    allegations.

10           8.      Answering paragraph 8 of the complaint, First Rate admits that one of

11   the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or

12   [Zurich's] authorized representative, access to records necessary to perform a

13   payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after

14   expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3

15   times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In

16   addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within

17   a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in

18   attempting to perform the audit unless [First Rate] provide[s] a compelling business

19   reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule

20   appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of

21   [First Rate's] failure to provide access by mailing a certified, return-receipt

22   document stating the increased premium and the total amount of [Zurich's] costs

23   incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other

24   obligations under this contract, 30 days after you receive the notification, [First

25   Rate] will be obligated to pay the total premium and costs referenced above. If,

26   thereafter, [First Rate] provide[s] access to [First Rate's] records within three years

27   after the policy expires, or within another mutually agreed upon time, and [Zurich]

28   succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise

3

1  [First Rate's] total premium and the costs due to reflect the results of the audit."

2  Except as so admitted, First Rate denies each and every allegation contained in

3  paragraph 8.

4        9.     Answering paragraph 9 of the complaint, First Rate admits that: (a) one

5  of the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or

6  [Zurich's] authorized representative, access to records necessary to perform a

7  payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after

8  expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3

9  times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In

10  addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within

11  a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in

12  attempting to perform the audit unless [First Rate] provide[s] a compelling business

13  reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule

14  appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of

15  [First Rate's] failure to provide access by mailing a certified, return-receipt

16  document stating the increased premium and the total amount of [Zurich's] costs

17  incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other

18  obligations under this contract, 30 days after you receive the notification, [First

19  Rate] will be obligated to pay the total premium and costs referenced above. If,

20  thereafter, [First Rate] provide[s] access to [First Rate's] records within three years

21  after the policy expires, or within another mutually agreed upon time, and [Zurich]

22  succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise

23  [First Rate's] total premium and the costs due to reflect the results of the audit."; and

24  (b) Zurich made more than one request to First Rate to perform a payroll verification

25  audit. Except as so admitted, First Rate is without sufficient knowledge or

26  information to form a belief as to the truth of the remaining allegations contained in

27  paragraph 9, and, on that basis, First Rate denies those allegations.

28        10.    Answering paragraph 10 of the complaint, First Rate admits that one of

4

the endorsements to the Agreement states, in part: "The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium [First Rate] paid to [Zurich], [First Rate] must pay [Zurich] the balance. If it is less, [Zurich] will refund the balance to [First Rate]." First Rate is without sufficient knowledge or information to form a belief as to the allegations, insofar as they pertain to the other Defendants, and, on that basis, denies the allegations, insofar as they pertain to the other Defendants. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, First Rate denies each and every allegation contained in paragraph 10.

    11.    Answering paragraph 11 of the complaint, First Rate admits that one of the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or [Zurich's] authorized representative, access to records necessary to perform a payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3 times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in attempting to perform the audit unless [First Rate] provide[s] a compelling business reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of [First Rate's] failure to provide access by mailing a certified, return-receipt document stating the increased premium and the total amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other obligations under this contract, 30 days after you receive the notification, [First Rate] will be obligated to pay the total premium and costs referenced above. If,

thereafter, [First Rate] provide[s] access to [First Rate's] records within three years after the policy expires, or within another mutually agreed upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise [First Rate's] total premium and the costs due to reflect the results of the audit." First Rate is without sufficient knowledge or information to form a belief as to the allegations, insofar as they pertain to the other Defendants, and, on that basis, denies the allegations, insofar as they pertain to the other Defendants. First Rate is also without sufficient knowledge or information to form a belief as to the allegation that Zurich estimated the additional premium owed, and, on that basis, denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, First Rate denies each and every allegation contained in paragraph 11.

12.    Answering paragraph 12 of the complaint, First Rate admits that it received an invoice, from Zurich, which invoice was dated August 20, 2015, and which invoice was in the amount of $345,808.00. Except as so admitted, First Rate is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 12, and, on that basis, First Rate denies those allegations.

13.    Answering paragraph 13 of the complaint, First Rate admits that, in the latter half of January 2016, Zurich made a follow-up demand for payment of $345,808.00, and that, in response to that follow-up demand, First Rate paid $15,000.00 to Zurich. First Rate is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 13, and, on that basis, First Rate denies those allegations.

14.    Answering paragraph 14 of the complaint, First Rate admits that, on or about February 8, 2016, Zurich made a follow-up demand for payment of $330,808.00, and that, in response, First Rate paid another $15,000.00. First Rate is without sufficient knowledge or information to form a belief as to the remaining

1    allegations contained in paragraph 14, and, on that basis, First Rate denies those

2    allegations.

3          15.    Answering paragraph 15 of the complaint, First Rate admits that Zurich

4    made follow-up efforts to get First Rate to pay $330,808.00, and that First Rate

5    refused to pay $330,808.00 in a lump sum. First Rate is without sufficient

6    knowledge or information to form a belief as to the allegations, insofar as they

7    pertain to the other Defendants, and, on that basis, denies the allegations, insofar as

8    they pertain to the other Defendants. Except as specifically admitted, and except as

9    denied on the basis of insufficient knowledge or information to form a belief, First

10   Rate denies each and every allegation contained in paragraph 15.

11         16.    Answering paragraph 16 of the complaint, First Rate admits that: (a) on

12   May 31, 2016, Zurich filed an action in the United States District Court for the

13   Central District of California, Western Division, titled Zurich American Insurance

14   Company of Illinois v. First Rate Staffing Corporation, et al., Case No. 2:16-cv-

15   3779 (the "Initial Lawsuit"); (b) Zurich's complaint in the Initial Lawsuit asserted

16   two causes of action; (c) the first cause of action in the complaint in the Initial

17   Lawsuit stated that it was for breach of contract, and it was based on allegations that

18   First Rate had refused to submit to a payroll audit and that First Rate had failed to

19   pay the balance of an estimated premium adjustment; and (d) the second cause of

20   action in the Initial Lawsuit stated that it was for breach of contract for specific

21   performance, and, among the relief it sought was "an order compelling Defendants

22   to submit to and cooperate fully with payroll and remuneration audits by Zurich."

23   Except as so admitted, First Rate denies each and every allegation contained in

24   paragraph 16.

25         17.    Answering paragraph 17 of the complaint, First Rate admits that: (a)

26   one of the endorsements to the Agreement states, in part: "The premium shown on

27   the Information Page, schedules, and endorsements is an estimate. The final

28   premium will be determined after this policy ends by using the actual, not the

7

1    estimated, premium basis and the proper classifications and rates that lawfully apply

2    to the business and work covered by this policy. If the final premium is more than

3    the premium [First Rate] paid to [Zurich], [First Rate] must pay [Zurich] the

4    balance. If it is less, [Zurich] will refund the balance to [First Rate]."; (b) another of

5    the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or

6    [Zurich's] authorized representative, access to records necessary to perform a

7    payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after

8    expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3

9    times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In

10   addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within

11   a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in

12   attempting to perform the audit unless [First Rate] provide[s] a compelling business

13   reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule

14   appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of

15   [First Rate's] failure to provide access by mailing a certified, return-receipt

16   document stating the increased premium and the total amount of [Zurich's] costs

17   incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other

18   obligations under this contract, 30 days after you receive the notification, [First

19   Rate] will be obligated to pay the total premium and costs referenced above. If,

20   thereafter, [First Rate] provide[s] access to [First Rate's] records within three years

21   after the policy expires, or within another mutually agreed upon time, and [Zurich]

22   succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise

23   [First Rate's] total premium and the costs due to reflect the results of the audit."; (c)

24   in or about January 2017, First Rate agreed to allow Zurich to perform a payroll

25   audit, under the Agreement; (d) as of January 2017, the Initial Action had been

26   pending for about seven months; and (e) in or about January 2017, when First Rate

27   agreed to allow Zurich to perform a payroll audit, under the Agreement, the trial in

28   the Initial Action was scheduled to begin on July 11, 2017. Except as so admitted,

1  First Rate denies each and every allegation contained in paragraph 17.

2      18.    Answering paragraph 18 of the complaint, First Rate admits the

3  allegation therein.

4      19.    Answering paragraph 19 of the complaint, First Rate admits that: (a)

5  the Initial Action was dismissed without prejudice; (b) before the Initial Action was

6  dismissed without prejudice, there was a stipulation in which the parties agreed,

7  among other things, that the trial date, and certain pretrial dates, would be continued

8  (the "Stipulation"); and (c) before the Initial Action was dismissed without

9  prejudice, the presiding judge, after reviewing the Stipulation, entered an order that,

10  among other things, continued the motion cut-off date, but that did not continue the

11  discovery cut-off or the trial date. Except as so admitted, First Rate denies each and

12  every allegation contained in paragraph 19.

13      20.    Answering paragraph 20 of the complaint, First Rate admits that: (a) in

14  or about May 2017, First Rate was advised that Zurich considered the payroll audit

15  to be "final"; and (b) Zurich claims that First Rate owes a premium adjustment

16  amount of $1,233,170.00. Except as so admitted, First Rate denies each and every

17  allegation contained in paragraph 20.

18      21.    Answering paragraph 21 of the complaint, First Rate admits that: (a) it

19  received, from Zurich, an invoice and demand for payment that was dated May 10,

20  2017, and which sought payment of $1,203,170.00; and (b) the due date on the

21  invoice and demand for payment was May 25, 2017. First Rate is without sufficient

22  knowledge or information to form a belief as to the remaining allegations contained

23  in paragraph 21, and, on that basis, First Rate denies those allegations.

24      22.    Answering paragraph 22 of the complaint, First Rate admits that it

25  made no response to Zurich's demand for payment of $1,203,170.00. First Rate is

26  without sufficient knowledge or information to form a belief as to the remaining

27  allegations contained in paragraph 22, and, on that basis, First Rate denies those

28  allegations.

1        23.    Answering paragraph 23 of the complaint, First Rate admits that it did

2    not respond to any invoice, or demand for payment, by Zurich for the claimed

3    premium adjustment balance of $1,203,170.00. Except as so admitted, First Rate

4    denies each and every allegation contained in paragraph 23, including the allegation

5    that the premium adjustment balance is $1,203,170.00.

6        24.    Answering paragraph 24 of the complaint, First Rate references

7    paragraphs 1 through 23 of this answer, and, by such reference, incorporates herein

8    all of the denials and admissions contained therein, as if the same were set forth

9    herein in full.

10       25.    Answering paragraph 25 of the complaint, First Rate admits that: (a) it

11   purchased the Agreement from Zurich; (b) one of the endorsements to the

12   Agreement states, in part: "The premium shown on the Information Page, schedules,

13   and endorsements is an estimate. The final premium will be determined after this

14   policy ends by using the actual, not the estimated, premium basis and the proper

15   classifications and rates that lawfully apply to the business and work covered by this

16   policy. If the final premium is more than the premium [First Rate] paid to [Zurich],

17   [First Rate] must pay [Zurich] the balance. If it is less, [Zurich] will refund the

18   balance to [First Rate]."; and (c) another of the endorsements to the Agreement

19   states: "[First Rate] must provide [Zurich], or [Zurich's] authorized representative,

20   access to records necessary to perform a payroll verification audit. If [First Rate]

21   fail[s] to provide access within 90 days after expiration of the policy, [First Rate]

22   [is] liable to pay a total premium equal to 3 times [Zurich's] current estimate of the

23   annual premium for [First Rate's] policy. In addition, if [First Rate] fail[s] to

24   provide access after [Zurich's] third request within a 90 day or longer period, [First

25   Rate] [is] also liable for [Zurich's] costs in attempting to perform the audit unless

26   [First Rate] provide[s] a compelling business reason for [its] failure. [¶] [Zurich]

27   will contact [First Rate] to schedule appointments during normal business hours. [¶]

28   [Zurich] will notify [First Rate] of [First Rate's] failure to provide access by mailing

1  a certified, return-receipt document stating the increased premium and the total

2  amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In

3  addition to any other obligations under this contract, 30 days after you receive the

4  notification, [First Rate] will be obligated to pay the total premium and costs

5  referenced above. If, thereafter, [First Rate] provide[s] access to [First Rate's]

6  records within three years after the policy expires, or within another mutually agreed

7  upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction,

8  [Zurich] will revise [First Rate's] total premium and the costs due to reflect the

9  results of the audit." Except as so admitted, First Rate is without sufficient

10  knowledge or information to form a belief as to the truth of the remaining

11  allegations contained in paragraph 25, and, on that basis, First Rate denies those

12  allegations.

13        26.    Answering paragraph 26 of the complaint, First Rate admits that: (a)

14  one of the endorsements to the Agreement states, in part: "The premium shown on

15  the Information Page, schedules, and endorsements is an estimate. The final

16  premium will be determined after this policy ends by using the actual, not the

17  estimated, premium basis and the proper classifications and rates that lawfully apply

18  to the business and work covered by this policy. If the final premium is more than

19  the premium [First Rate] paid to [Zurich], [First Rate] must pay [Zurich] the

20  balance. If it is less, [Zurich] will refund the balance to [First Rate]."; and (b)

21  another of the endorsements to the Agreement states: "[First Rate] must provide

22  [Zurich], or [Zurich's] authorized representative, access to records necessary to

23  perform a payroll verification audit. If [First Rate] fail[s] to provide access within 90

24  days after expiration of the policy, [First Rate] [is] liable to pay a total premium

25  equal to 3 times [Zurich's] current estimate of the annual premium for [First Rate's]

26  policy. In addition, if [First Rate] fail[s] to provide access after [Zurich's] third

27  request within a 90 day or longer period, [First Rate] [is] also liable for [Zurich's]

28  costs in attempting to perform the audit unless [First Rate] provide[s] a compelling

business reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of [First Rate's] failure to provide access by mailing a certified, return-receipt document stating the increased premium and the total amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other obligations under this contract, 30 days after you receive the notification, [First Rate] will be obligated to pay the total premium and costs referenced above. If, thereafter, [First Rate] provide[s] access to [First Rate's] records within three years after the policy expires, or within another mutually agreed upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise [First Rate's] total premium and the costs due to reflect the results of the audit." Except as so admitted, First Rate is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 26, and, on that basis, First Rate denies those allegations.

27.     Answering paragraph 27 of the complaint, First Rate admits that: (a) one of the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or [Zurich's] authorized representative, access to records necessary to perform a payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3 times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in attempting to perform the audit unless [First Rate] provide[s] a compelling business reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of [First Rate's] failure to provide access by mailing a certified, return-receipt document stating the increased premium and the total amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other

obligations under this contract, 30 days after you receive the notification, [First Rate] will be obligated to pay the total premium and costs referenced above. If, thereafter, [First Rate] provide[s] access to [First Rate's] records within three years after the policy expires, or within another mutually agreed upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise [First Rate's] total premium and the costs due to reflect the results of the audit."; and (b) Zurich made more than one request to First Rate to perform a payroll verification audit. Except as so admitted, First Rate is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 27, and, on that basis, First Rate denies those allegations.

28.    Answering paragraph 28 of the complaint, First Rate admits that one of the endorsements to the Agreement states, in part: "The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium [First Rate] paid to [Zurich], [First Rate] must pay [Zurich] the balance. If it is less, [Zurich] will refund the balance to [First Rate]." First Rate is without sufficient knowledge or information to form a belief as to the allegations, insofar as they pertain to the other Defendants, and, on that basis, denies the allegations, insofar as they pertain to the other Defendants. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, First Rate denies each and every allegation contained in paragraph 28.

29.    Answering paragraph 29 of the complaint, First Rate admits that: (a) one of the endorsements to the Agreement states, in part: "The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply

to the business and work covered by this policy. If the final premium is more than the premium [First Rate] paid to [Zurich], [First Rate] must pay [Zurich] the balance. If it is less, [Zurich] will refund the balance to [First Rate]."; (b) another of the endorsements to the Agreement states: "[First Rate] must provide [Zurich], or [Zurich's] authorized representative, access to records necessary to perform a payroll verification audit. If [First Rate] fail[s] to provide access within 90 days after expiration of the policy, [First Rate] [is] liable to pay a total premium equal to 3 times [Zurich's] current estimate of the annual premium for [First Rate's] policy. In addition, if [First Rate] fail[s] to provide access after [Zurich's] third request within a 90 day or longer period, [First Rate] [is] also liable for [Zurich's] costs in attempting to perform the audit unless [First Rate] provide[s] a compelling business reason for [its] failure. [¶] [Zurich] will contact [First Rate] to schedule appointments during normal business hours. [¶] [Zurich] will notify [First Rate] of [First Rate's] failure to provide access by mailing a certified, return-receipt document stating the increased premium and the total amount of [Zurich's] costs incurred in [Zurich's] attempt(s) to perform an audit. In addition to any other obligations under this contract, 30 days after you receive the notification, [First Rate] will be obligated to pay the total premium and costs referenced above. If, thereafter, [First Rate] provide[s] access to [First Rate's] records within three years after the policy expires, or within another mutually agreed upon time, and [Zurich] succeed[s] in performing the audit to [Zurich's] satisfaction, [Zurich] will revise [First Rate's] total premium and the costs due to reflect the results of the audit."; (c) in or about January 2017, First Rate agreed to allow Zurich to perform a payroll audit, under the Agreement; (d) as of January 2017, the Initial Action had been filed; (e) in or about January 2017, when First Rate agreed to allow Zurich to perform a payroll audit, under the Agreement, the trial in the Initial Action was scheduled to begin on July 11, 2017; and (f) a payroll audit of First Rate was performed by Zurich on March 3, 2017. First Rate is without sufficient knowledge or information

14

1 to form a belief as to the remaining allegations contained in paragraph 29, and, on

2 that basis, First Rate denies those allegations.

3   30. Answering paragraph 30 of the complaint, First Rate admits that: (a) in

4 or about May 2017, First Rate was advised that Zurich considered the payroll audit

5 to be "final"; (b) Zurich claims that First Rate owed a premium adjustment amount

6 of $1,233,170.00; and (c) First Rate is entitled to $30,000 in credits against any

7 premium adjustment amount that it may owe. First Rate is without sufficient

8 knowledge or information to form a belief as to the allegations, insofar as they

9 pertain to the other Defendants, and, on that basis, denies those allegations, insofar

10 as they pertain to the other Defendants. Except as specifically admitted, and except

11 as denied on the basis of insufficient knowledge or information to form a belief,

12 First Rate denies each and every allegation contained in paragraph 30.

13   31. Answering paragraph 31 of the complaint, First Rate admits that:  (a)

14 on or about May 10, 2017, First Rate received, from Zurich, the supposed results of

15 a payroll audit, and an invoice and demand for payment of $1,203,170.00; and (b)

16 the due date on the invoice and demand for payment was May 25, 2017. First Rate is

17 without sufficient knowledge or information to form a belief as to the remaining

18 allegations contained in paragraph 31, and, on that basis, First Rate denies those

19 allegations.

20   32. Answering paragraph 32 of the complaint, First Rate admits that it

21 made no response to Zurich's invoice and demand for payment of $1,203,170.00,

22 and that it made no payment in response to Zurich's invoice and demand for

23 payment of $1,203,170.00. First Rate is without sufficient knowledge or information

24 to form a belief as to the remaining allegations contained in paragraph 32, and, on

25 that basis, First Rate denies those allegations.

26   33. Answering paragraph 33 of the complaint, First Rate admits that: (a) it

27 has made no payments, to Zurich, in response to the claimed premium adjustment

28 balance of $1,203,170.00; and (b) it has not been responsive to requests, by Zurich,

1   to pay the claimed premium adjustment balance of $1,203,170.00. First Rate is

2   without sufficient knowledge or information to form a belief as to the remaining

3   allegations contained in paragraph 33, and, on that basis, First Rate denies those

4   allegations.

5          34.    Answering paragraph 34 of the complaint, First Rate denies each and

6   every allegation therein.

7          35.    Answering paragraph 35 of the complaint, First Rate admits that it has

8   not paid the claimed premium adjustment balance of $1,203,170.00. First Rate is

9   without sufficient knowledge or information to form a belief as to the allegations,

10  insofar as they pertain to the other Defendants, and, on that basis, denies the

11  allegations, insofar as they pertain to the other Defendants. Except as specifically

12  admitted, and except as denied on the basis of insufficient knowledge or information

13  to form a belief, First Rate denies each and every allegation contained in paragraph

14  35, including the allegation that the premium adjustment balance is $1,203,170.00.

15         36.    Answering paragraph 36 of the complaint, First Rate is without

16  sufficient knowledge or information to form a belief as to the allegations, insofar as

17  they pertain to the other Defendants, and, on that basis, denies the allegations,

18  insofar as they pertain to the other Defendants. Except as denied on the basis of

19  insufficient knowledge or information to form a belief, First Rate denies each and

20  every allegation contained in paragraph 36, and specifically denies that Zurich has

21  been damaged in any amount.

22         37.    Answering paragraph 37 of the complaint, First Rate admits that Zurich

23  seeks to obtain a judgment for damages according to proof, plus daily pre-judgment

24  interest calculated at the statutory rate of ten (10) percent per annum, costs of suit,

25  and such other and further relief as the court deems proper. Except as specifically

26  admitted, First Rate denies each and every allegation contained in paragraph 37.

27

28

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

**(Off Set)**

1.      First Rate is entitled to an off set of the amount Plaintiff seeks because Plaintiff (a) failed to give First Rate credit for payments made; (b) breached the implied warranty of good faith and fair dealing by acting unreasonably, which denied First Rate its benefits under the contract as alleged in more detail herein; (c) breached the terms of the contract thereby financially damaging as alleged in more detail herein; (d) and Plaintiff performed that acts alleged herein with knowledge of the financial consequences to First Rate and its future business.

**SECOND AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

2.      Plaintiff is not entitled to interest and/or attorneys' fees when it allowed them to add up unnecessarily by failing to perform a prompt payroll audit, and failing to take prompt action to collect the alleged debt due to its later defective payroll audit and temporary abandonment of its own claims.

**THIRD AFFIRMATIVE DEFENSE**

**(Breach of Contract by Plaintiff)**

3.      Plaintiff failed to comply with the terms of the contract by (a) failing to give First Rate credit for payments made; (b) breaching the implied warranty of good faith and fair dealing by acting unreasonably, which denied First Rate its benefits under the contract as alleged in more detail herein; (c) by breaching the terms of the contract thereby damaging First Rate in an amount greater than that demanded by Plaintiff.

**FOURTH AFFIRMATIVE DEFENSE**

**(Fraudulent Inducement)**

4.      Plaintiff represented that it would comply with its rate filings and schedule modification rating, on which First Rate relied when entering the

17

1    Agreement. Plaintiff did not comply with its rate filings and schedule modification

2    rating, as alleged in more detail herein.

3    **FIFTH AFFIRMATIVE DEFENSE**

4    **(Waiver)**

5          5.     Plaintiff has waived its right to pursue its claims by reason of its own

6    actions and course of conduct, including but not limited to Plaintiff's

7    misrepresentations and omissions of material facts concerning its Agreement,

8    Plaintiff's refusal to perform a timely payroll audit, Plaintiff's unilateral and

9    premature decision to generate an estimated audit, Plaintiff's premature decision to

10    falsely report First Rate as uncooperative to the WCIRB, and Plaintiff's failure to

11    warn First Rate of the actions Plaintiff had taken as required of Plaintiff by its

12    Agreement, State regulations, and its own internal procedures.

13    **SIXTH AFFIRMATIVE DEFENSE**

14    **(Public Policy)**

15          6.     Plaintiff violated public policy by engaging in the illegal conduct of

16    refusing to comply with its own rate filings or State regulations that exist to protect

17    insureds like First Rate.

18    **SEVENTH AFFIRMATIVE DEFENSE**

19    **(Equitable Estoppel)**

20          7.     Plaintiff chose to generate an estimated audit as it would for an

21    uncooperative insured, and report First Rate as uncooperative to the WCIRB. By

22    doing so, Plaintiff caused First Rate to suffer all of the statutory and regulatory

23    consequences of being an uncooperative insured, even though it was not. In

24    response to the consequences that the Plaintiff intentionally and knowingly set in

25    motion, First Rate was forced to substantially and significantly change the way it

26    does business, and suffered substantial financial losses. Therefore Plaintiff, having

27    elected to follow this course of conduct/remedy, is entitled to collect no more than

28    the amount due under the estimated audit.

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EIGHTH AFFIRMATIVE DEFENSE**

**(Promissory Estoppel)**

8.      Plaintiff chose to generate an estimated audit as it would for an uncooperative insured, and report First Rate as uncooperative to the WCIRB.  By doing so, Plaintiff caused First Rate to suffer all of the statutory and regulatory consequences of being an uncooperative insured, even though it was not.  In response to the consequences the Plaintiff intentionally and knowingly set in motion, First Rate was forced to substantially and significantly change the way it does business, and suffered substantial financial losses.  Therefore Plaintiff, having elected to follow this course of conduct/remedy, is entitled to collect no more than the amount due under the estimated audit.

**NINTH AFFIRMATIVE DEFENSE**

**(Election Of Remedy)**

9.      Plaintiff chose to generate an estimated audit as it would for an uncooperative insured, and report First Rate as uncooperative to the WCIRB.  By doing so, Plaintiff caused First Rate to suffer all of the statutory and regulatory consequences of being an uncooperative insured, even though it was not.  In response to the consequences the Plaintiff intentionally and knowingly set in motion, First Rate was forced to substantially and significantly change the way it does business, and suffered substantial financial losses.  Therefore Plaintiff, having elected to follow this course of conduct/remedy, is entitled to collect no more than the amount due under the estimated audit.

**TENTH AFFIRMATIVE DEFENSE**

**(Excused Performance)**

10.      Plaintiff chose to generate an estimated audit as it would for an uncooperative insured, and report First Rate as uncooperative to the WCIRB.  By doing so, Plaintiff caused First Rate to suffer all of the statutory and regulatory consequences of being an uncooperative insured, even though it was not.  In

19

1  response to the consequences the Plaintiff intentionally and knowingly set in
2  motion, First Rate was forced to substantially and significantly change the way it
3  does business, and suffered substantial financial losses.  Therefore Plaintiff, having
4  elected to follow this course of conduct/remedy, excused First Rate's obligation to
5  pay Plaintiff based on the outcome of an actual payroll audit.

6

7                              **PRAYER FOR RELIEF**
8         WHEREFORE, First Rate prays for judgment as follows:
9         1.      That Zurich take nothing by its complaint;
10        2.      That judgment be entered for First Rate;
11        3.      That First Rate be awarded its costs of suit; and
12        4.      For such other relief as the Court deems proper.

13

14

15                      **SECOND AMENDED COUNTERCLAIM**
16        Defendant First Rate Staffing Corporation ("First Rate") counterclaims
17  against plaintiff Zurich American Insurance Company of Illinois ("Zurich"), Zurich
18  North America ("Zurich NA") and World Wide Specialty Programs, Inc. ("World
19  Wide") as follows:
20                                    **Parties**
21        1.      First Rate is a Delaware corporation. Its principal place of business is in
22  Santa Fe Springs, California.
23        2.      First Rate is informed and believes, and based upon such information
24  and belief alleges, that, Zurich is an Illinois corporation, and that its principal place
25  of business is in Schaumburg, Illinois.
26        3.      First Rate is informed and believes, and based upon such information
27  and belief alleges, that, Zurich NA is an Illinois corporation, and that its principal
28  place of business is in Schaumburg, Illinois.  First Rate is also informed an believes,

1  and based upon such information and belief alleges, that each of the insurance

2  carriers that operate under the "Zurich" name in California, including the Plaintiff

3  and Counter-Defendant Zurich American Insurance Company of Illinois, are part of,

4  or subsidiaries of, Zurich NA.  First Rate is informed and believes, and based upon

5  such information and belief alleges that all employees working for Plaintiff and

6  Counter-Defendant Zurich American Insurance Company of Illinois are directly

7  employed by Zurich NA.

8      4.     First Rate is informed and believes, and based upon such information

9  and belief alleges that World Wide is a New York corporation, and that its principal

10  place of business is in Melville, New York.

11      5.     At all times herein mentioned, Counter-Defendants, and each of them,

12  were the agents, servants, and employees of each of the other Counter-Defendants

13  herein, and at the same time and place of the events hereinafter described, were

14  acting within the course and scope of said agency and employment with the

15  permission and consent of the other Counter-Defendants and each of them. Counter-

16  Defendants are, and each of them is, the alter ego of the other Counter-Defendants,

17  and Counter-Defendants are essentially the extension of each other.

18                          **Jurisdiction and Venue**

19      6.     This Court has jurisdiction over this counterclaim under 28 U.S.C. §

20  1332, and under 28 U.S.C. § 1367(a).

21      7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), and

22  because Zurich filed its lawsuit against First Rate in this district.

23      8.     This Court has personal jurisdiction over Zurich NA because, through

24  its four insurance carriers, including Plaintiff and Counter-Defendant Zurich

25  American Insurance Company of Illinois, Zurich NA transacts business throughout

26  California, and has offices in Los Angeles.  Individuals employed by Zurich NA

27  made decisions that affected First Rate's workers' compensation insurance policy,

28  including but not limited to the decision to place First Rate with the Plaintiff and

21

1  Counter-Defendant Zurich American Insurance Company of Illinois.

2       9.    This Court has personal jurisdiction over World Wide because, on

3  information and belief, it markets to and does business in nearly all 50 States,

4  including throughout California.  This is reflected in its webpage at www.World

5  Widei.com.  World Wide is an agent and associate of Zurich and Zurich NA for

6  business throughout California.  World Wide was a co-conspirator with Zurich and

7  Zurich NA concerning the events alleged herein, as specifically concerns First Rate.

8                          **General Allegations**

9      10.    First Rate procured three workers' compensation insurance policies

10  from Zurich NA.  For all three years, Zurich NA placed First Rate in a policy issued

11  by Zurich, with policy numbers WC 9491028-00, WC 9491028-01, and WC

12  9491028-02, respectively.  The policy periods were May 7, 2012 to May 7, 2013

13  (the "2012 policy"), May 7, 2013 to May 7, 2014 (the "2013 policy"), May 7, 2014

14  to 2015 (the "2014 policy").  These are collectively referred to herein as the

15  "Policies."  First Rate paid premium for each policy.

16      11.    Because payroll fluctuates, the policy requires a payroll audit to take

17  place within three years after the policy ends.  The Policies state that "the final

18  premium will be determined after this policy ends by using the actual premium basis

19  and the proper classifications, rate and rating plans that lawfully apply to the

20  business and work covered by this policy."

21      12.    Under applicable regulations, Zurich was required to provide, to the

22  WCIRB, audited payroll figures for First Rate.  Those regulations became a part of

23  the Agreement as fully as if incorporated therein by reference.

24      13.    Zurich's policy requires that "[a]ll premium for this policy will be

25  determined by our manuals of rules, rates, rating plans and classifications."  Zurich

26  must file its rating plans with, and have them approved by, the California

27  Department of Insurance.

28

The Schedule Modification Rating

14.     One of the components in determining premium is a schedule modification or rating.  Carriers such as Zurich include in their rate filings or rating plans a description and range of modifications that they will use to evaluate and determine an insured's schedule modification.

15.     Zurich's rating tables provide that an insured can receive a maximum credit or debit of 50%.  A credit decreases the premium amount, while a debit does the opposite.  First Rate received the maximum 50% debit for its 2012 and 2013 policies and a 32% debit for its 2014 policy.

16.     While Zurich appears to have filed and obtained approval for its schedule modification rating plans, First Rate contends that Zurich failed to properly evaluate and determine First Rate's schedule modifications for the Policies.

17.     Zurich was obligated under the Policies and the implied covenants contained therein to properly evaluate and determine First Rate's schedule modifications.  This is to be done in a fair, reasonable, non-arbitrary, and non-discriminatory manner.  Zurich failed to do this.

18.     Instead, Zurich made its determinations in an arbitrary and capricious manner, and without regard to the requirements imposed on it by the language in its own schedule modification rate filings.

19.     Only through recent discovery in this action did First Rate learn that Zurich refused to follow its own schedule modification rate filings.  Instead, Zurich had an undisclosed, discriminatory policy of surcharging staffing companies, like First Rate, by applying the maximum, or nearly the maximum, debit.  This was a breach of the Policies and of the implied covenant of good faith and fair dealing.

20.     Zurich's Schedule Rating Worksheet for the First Rate 2013 policy reflects that First Rate should have received a 5% debit schedule modification.  Zurich instead used a 50% debit to increase First Rate's premiums by a substantial amount.  This was done pursuant to its illegal corporate policy of surcharging

1   staffing companies at or near the maximum schedule modification percentage

2   amount, regardless of whether the staffing company qualified for or should have

3   received a better schedule modification.  Zurich then created an undated and

4   unsigned Schedule Rating Worksheet, also for the 2013 policy.  On information and

5   belief, Zurich created it an attempt to create a false pretext for why it charged First

6   Rate staffing a 50% debit.

7        21.   Zurich failed to follow and apply schedule modifications for First Rate

8   in a fair, reasonable, non-arbitrary, and non-discriminatory manner.  Zurich failed to

9   even prepare a Schedule Rating Worksheet for the 2014 policy before assigning

10  First Rate a 32% debit.

11       22.   These Schedule Rating Worksheets were never provided to First Rate

12  and have only recently been obtained through discovery in this action.  First Rate

13  was unaware of Zurich's policy and the manner in which it uniformly debited

14  staffing companies the maximum or near maximum debit regardless of whether a

15  staffing company should have received a lower debit or credit.

16       23.   Zurich has testified that the Schedule Rating Worksheets were filled

17  out by Zurich's agent and acting underwriter World Wide.  Zurich then applied the

18  schedule ratings to the policies.

19       24.   On information and belief, World Wide knew of Zurich's secret

20  corporate policy of surcharging all staffing companies across the board, without

21  regard to a particular insured's individual characteristics that are required to be

22  evaluated pursuant to the policy language and rate filings.  On information and

23  belief, World Wide colluded and conspired with Zurich in the execution of Zurich's

24  illegal policy, as well as the creation of fraudulent Schedule Rating Worksheets, in

25  direct violation of Zurich's policy language and its schedule modification rate

26  filings.

27       25.   First Rate first became aware of both the existence and involvement of

28  World Wide, as alleged herein, through the recent discovery in this action.

24

26.     Zurich violated its contractual obligations and implied covenant of good faith and fair dealing to evaluate and apply a schedule rating in a reasonable, non-arbitrary manner, with due regard to each category listed in the rate filings.  The manner in which Zurich came up with the schedule modifications makes illusory the policy language obligating it to follow its rate filings.

27.     But for Zurich's refusal to follow its schedule modification rate filings, First Rate would have received a more favorable schedule rating modification and paid a lower premium than it was given and charged by Zurich.

28.     At a minimum, there should have been 0 for the schedule modification for the 2014 policy.  Instead, Zurich used a 32% schedule modification, resulting in additional $438,000 in premium for the 2014 policy.  Zurich's use of 50% schedule modifications for the 2012 and 2013 policies resulted in overinflated premiums of at least $200,000 that First Rate has already paid.

<u>The Rate Filing And Carrier Placement</u>

29.     In addition to the schedule modification issue, Zurich in conjunction with Zurich NA had a second policy and practice that directly violated its own rate filings.  Since 2011 and continuing to this day, Zurich NA has placed all temporary staffing insureds in its most expensive carrier: Zurich the Plaintiff herein.  On average, the rates for the most expensive carrier are 20% higher than the rates for the next most expensive carrier under the Zurich NA umbrella.  This has been done pursuant to another secret corporate policy that discriminates against all staffing companies across the board.

30.     Its rate filing requires insureds to be placed in carriers based on an assessment of their losses, years in business, and financial information.  Zurich NA never advised California regulatory authorities that it would ignore its own rate filings and penalize temporary staffing companies by uniformly charging them the highest rates.

31.     Only through recent discovery in this action did First Rate learn that

1  Zurich NA refused to follow its own rate filing and replace it with a discriminatory
2  policy of placing staffing companies, like First Rate, with the most expensive
3  carrier.  This was a breach of the Policies and of the implied covenant of good faith
4  and fair dealing.

5       32.    At a minimum, First Rate should have qualified for the second most
6  expensive carrier.  Zurich NA's failure to place First Rate with that carrier resulted
7  in a substantial overcharge of premium for all three policies of at least $400,000.

8       33.    On information and belief, World Wide was Zurich NA's agent and
9  acting underwriter that was involved in the placement of First Rate with the most
10  expensive carrier for each of the three Policies.

11       34.    On information and belief, World Wide knew of Zurich NA's secret
12  corporate policy of placing all staffing companies with its most expensive carrier
13  without regard to the criteria Zurich NA was required to use when placing insureds
14  in one of its carriers.  On information and belief, World Wide colluded and
15  conspired with Zurich NA in the execution of Zurich NA's illegal policy in direct
16  violation of Zurich NA's rate filing.

17       35.    First Rate first became aware of both the existence and involvement of
18  World Wide, as alleged herein, through the recent discovery in this action.

19
20
21                The Payroll Audit And Report To The WCIRB
22       36.    Under California law, an employer's workers' compensation losses
23  affect the amount of the premium it will have to pay for workers' compensation
24  insurance. "To facilitate determination of the accident experience and history of
25  each insured, the workers' compensation system allows 'experience rating,' a
26  'procedure utilizing past insurance experience of the individual policyholder to
27  forecast future losses by measuring the policyholder's loss experience against the
28  loss experience of policyholders in the same classification to produce a prospective

1   premium credit, debit, or unity modification." Allied Interstate, Inc. v. Sessions

2   Payroll Mgmt., Inc., 203 Cal. App. 4th 808, 818 (2012) (quoting Cal. Ins. Code §

3   11730(c)). "The data reported by workers' compensation insurers . . . 'provide the

4   raw material with which to develop an "experience modification factor" for each

5   qualified employer. That factor plays a part in calculating the employer's workers'

6   compensation insurance premium.'" Id. at 819 (quoting Simi Corp. v. Garamendi,

7   109 Cal. App. 4th 1496, 1501 (2003).)

8          37.    Workers' compensation insurers report their data to the Workers'

9   Compensation Insurance Rating Bureau (the "WCIRB"). The WCIRB is responsible

10  for calculating each employer's experience modification factor ("ex-mod"). The

11  higher an employer's ex-mod, the higher that employer's workers' compensation

12  insurance premiums will be.

13         38.    One item that the WCIRB uses in calculating an employer's ex-mod is

14  the dollar amount of the employer's payroll. Generally speaking, if the employer's

15  workers' compensation losses remain the same, but its payroll increases, the

16  employer's ex-mod will decrease, since the losses are remaining the same despite

17  more employers, or more hours worked, or both. Conversely, generally speaking, if

18  the employer's workers' compensation losses remain the same, but its payroll

19  decreases, the employer's ex-mod will increase, since the losses are remaining the

20  same despite fewer employees, or less hours worked, or both.

21         39.    Under the applicable regulations incorporated into the Policies, when it

22  is not possible for an insurer to obtain audited payroll data to submit to the WCIRB,

23  because the policyholder refuses to provide the insurer access to the payroll and

24  other required records, the insurer is to notify the WCIRB of that by using the

25  Estimated Audit Code "U."  Under the applicable regulations incorporated into the

26  Policies, "[a] 'U' Estimated Audit Code means that the insurer has made a good

27  faith effort to complete the audit and inform the policyholder of the possible

28  consequences of not permitting the insurer to complete the final audit, which may

1   result in the exclusion of the payroll from the policyholder's experience

2   modification."

3       40.    In addition the 2014 policy contains an endorsement which mandates

4   Zurich to "notify [First Rate] of [First Rate's] failure to provide access [to records

5   necessary to perform an audit] by mailing a certified, return-receipt document

6   stating the increased premium and the total amount of our costs incurred in

7   [Zurich's] attempt(s) to perform an audit." (Emphasis added).

8       41.    Zurich's internal policies and procedures required the Zurich auditor to

9   send a "Non-Compliant Letter" to First Rate advising First Rate that it had failed to

10   comply with the audit and providing First Rate ten business days to respond to the

11   letter.

12       42.    Zurich did not make a good faith effort to perform a payroll audit of

13   First Rate following the end of the 2014 policy on May 7, 2015. At the end of July,

14   2015, Zurich refused to perform the audit. At that time, First Rate was attempting to

15   schedule the audit for a date in August, 2015, but Zurich refused to schedule it in

16   August and ceased all communications with First Rate about the audit.

17       43.    Zurich's auditor generated what is referred to as an "estimated audit"

18   and reported First Rate's payroll to the WCIRB using the Estimated Audit Code

19   "U." Zurich did all of this to satisfy its own corporate monthly audit quota goals.

20   By refusing to perform the actual audit and generating an estimated audit, Zurich's

21   auditor was able to count First Rate in his monthly quota for July 2015.

22       44.    Zurich did not notify First Rate as required of Zurich by statue, the

23   express terms of its policy, or by Zurich's own procedures. Nor did Zurich provide

24   any notice whatsoever that substantially or materially complied with the foregoing

25   requirements. Zurich never informed First Rate of the consequences to First Rate

26   that would necessarily result from Zurich's reporting to the WCIRB, or how to

27   avoid the consequences of Zurich's reporting. Zurich thereby breached the terms of

28   its policy, the law, and its own procedures.

1        45.    Zurich knew, as everyone in the insurance industry knows, that

2  reporting an uncooperative "U" code to the WCIRB would dramatically increase

3  First Rate's premium.  Ignoring the 2014 policy, California regulations, and its own

4  internal procedures, Zurich set up a system designed to place its own interests in

5  audit quotas far above that of its insureds.  There is no legal reason why the audit

6  could not have been performed in August, or in September, October, or November.

7  Zurich's acted with complete disregard for First Rate or its interests or the

8  consequences on First Rate's continued survival when its workers' compensation

9  premium dramatically increased as a result of Zurich's acts.

10       46.    First Rate is informed and believes, and based upon such information

11  and belief alleges, that, as a result of Zurich reporting First Rate's payroll to the

12  WCIRB using Estimated Audit Code "U," First Rate's ex-mod increased from at or

13  about 1.9, to at or about 3.3.

14       47.    As a result of the increase in First Rate's ex-mod, the April 2016

15  renewal quote from First Rate's then current workers' compensation insurance

16  carrier was higher than it otherwise would have been.

17       48.    In light of the amount of the April 2016 renewal quote that First Rate

18  received from its then current workers' compensation carrier, it was more cost

19  effective for First Rate to contract with SouthEast Personnel Leasing, Inc.

20  ("SouthEast"), a professional employer organization, to outsource its workers'

21  compensation insurance coverage. So, instead of renewing with its then current

22  workers' compensation carrier, First Rate contracted with SouthEast, thereby

23  outsourcing its workers' compensation insurance coverage.

24       49.    First Rate is informed and believes, and based upon such information

25  and belief alleges, that, had it been able to renew with its then current workers'

26  compensation carrier at a premium that was based on First Rate's true ex-mod,

27  rather than at a premium that was based on its ex-mod as artificially inflated due to

28  Zurich use of Estimated Audit Code "U," then the cost, to First Rate, of obtaining

workers' compensation insurance coverage would have been over $1 million less than it cost to obtain workers' compensation insurance through SouthEast.

50.     First Rate is informed and believes, and based upon such information and belief alleges, that SouthEast became aware of the increase in First Rate's ex-mod from at or about 1.9, to at or about 3.3, and that, because SouthEast had become aware of that increase in First Rate's ex-mod, SouthEast required First Rate to pay an additional amount for workers' compensation insurance coverage, which amount First Rate had no reasonable alternative but to pay. Payment of this further amount to SouthEast increased the cost, to First Rate, for workers' compensation insurance coverage, by $330,000, or thereabouts.

51.     At the time First Rate purchased the Policies, Zurich had reason to know that, if First Rate's ex-mod was artificially inflated, due to Zurich's inappropriate use of Estimated Audit Code "U," then: (a) certain existing customers of First Rate who would otherwise have continued to contract with First Rate would not do so, because of First Rate's ex-mod; (b) certain prospective customers of First Rate who would otherwise have contracted with First Rate would not do so, because of First Rate's ex-mod; and (c) First Rate would not be able to effectively compete for certain customers because of the artificially increased cost, to First Rate, of securing workers' compensation insurance.

52.     When Zurich breached the Policies, by reporting First Rate's payroll to the WCIRB using the Estimated Audit Code "U," thereby artificially increasing First Rate's ex-mod, that proximately caused injury to First Rate, in that: (a) the cost, to First Rate, of obtaining workers' compensation insurance coverage was increased by in excess of $1.3 million; and (b) First Rate lost profits that it would otherwise have received, thereby damaging First Rate in an amount that will be proven at trial.

### FIRST CAUSE OF ACTION
#### (For Breach of Contract, Against All Counter-Defendants)

53.     First Rate incorporates by reference each and every allegation contained in paragraphs 1 through 52, above, as though fully set forth herein.

54.     First Rate entered into an agreement with Zurich NA and Zurich to purchase workers' compensation insurance policies and entered into the Policies with Zurich.

55.     The Counter-Defendants breached the Policies by failing to properly apply the filed rating plans and schedule modification as alleged herein.

56.     Zurich breached the 2014 policy by refusing to complete the payroll audit, failing to make a good faith effort to complete the payroll audit, falsely reporting First Rate to the WCIRB as uncooperative, failing to notify and warn First Rate concerning the payroll audit and reports to the WCIRB as required by regulation, the 2014 policy, and Zurich's own procedures.

57.     First Rate has performed all terms of the Policies except for which any of whose performance has been excused by Zurich's conduct.

58.     As a proximate result of Counter-Defendants' breaches of the Policies, First Rate has suffered losses in an amount to be proven at trial.

59.     At all times herein mentioned, Counter-Defendants, and each of them, were the agents, servants, and employees of each of the other Counter-Defendants herein, and were acting within the course and scope of said agency and employment with the permission and consent of the other Counter-Defendants and each of them. Counter-Defendants are thus vicariously liable for the acts of each of the other Counter-Defendants.

### SECOND CAUSE OF ACTION
#### (For Intentional Interference with Economic Relationship, Against All Counter-Defendants)

60.     First Rate incorporates by reference each and every allegation contained in paragraphs 1 through 59, above, as though fully set forth herein.

31

1         61.    The Zurich Counter-Defendants knew that First Rate, like all California

2  employers, was required to carry workers' compensation insurance for its

3  employees.

4         62.    The Zurich Counter-Defendants knew that First Rate's then current

5  workers' compensation insurance carrier would become aware of the increase in

6  First Rate's ex-mod, and the Zurich Counter-Defendants also knew that, because of

7  the increase in First Rate's ex-mod, the 2016 renewal quote from First Rate's then

8  current workers' compensation insurance carrier would be significantly higher than

9  it otherwise would have been.

10         63.    When the Zurich Counter-Defendants reported First Rate's payroll to

11  the WCIRB using Estimated Audit Code "U," one of the reasons Zurich did so was

12  to trigger a punitive increase in First Rate's ex-mod, thereby making it prohibitively

13  expensive for First Rate to renew its workers' compensation insurance with its then

14  current workers' compensation insurance carrier.

15         64.    Prior to issuing a renewal quote to First Rate in or about April 2016,

16  First Rate's then current workers' compensation insurance carrier became aware of

17  the increase in First Rate's ex-mod. As a result of the increase in First Rate's ex-

18  mod, the April 2016 renewal quote from First Rate's then current workers'

19  compensation insurance carrier was higher than it otherwise would have been.

20         65.    In light of the amount of the April 2016 renewal quote that First Rate

21  received from its then current workers' compensation carrier, it was more cost

22  effective for First Rate to contract with SouthEast, a professional employer

23  organization, to outsource its workers' compensation insurance coverage. So,

24  instead of renewing with its then current workers' compensation carrier, First Rate

25  contracted with SouthEast, thereby outsourcing its workers' compensation insurance

26  coverage.

27         66.    Had First Rate been able to renew with its then current workers'

28  compensation carrier at a premium that was based on First Rate's true ex-mod,

1  rather than at a premium that was based on its ex-mod as artificially inflated due to

2  the Zurich Counter-Defendants' use of Estimated Audit Code "U," then the cost, to

3  First Rate, of obtaining workers' compensation insurance coverage would have been

4  over $1 million less than it cost to obtain workers' compensation insurance through

5  SouthEast.

6        67.    After joining SouthEast, it became aware of the increase in First Rate's

7  ex-mod from at or about 1.9, to at or about 3.3. Thus, SouthEast required First Rate

8  to pay an additional amount for workers' compensation insurance coverage, which

9  amount First Rate had no reasonable alternative but to pay. Payment of this further

10  amount to SouthEast increased the cost to First Rate for workers' compensation

11  insurance coverage, by $330,000, or thereabouts.

12        68.    As a direct and proximate result of the Zurich Counter-Defendants' acts

13  First Rate's profit margin was completely wiped out for many of its customers.

14  First Rate had to let go of customers who were too costly under the higher workers'

15  compensation costs. First Rate had to increase its fees to almost all of its clients,

16  and lost clients in the process. First Rate also lost out on new assignments from

17  existing customers who employed other staffing companies to meet their growing

18  needs in 2016 and 2017. First Rate has suffered losses in an amount to be proven at

19  trial.

20        69.    The aforementioned conduct of Zurich and Zurich NA was willful,

21  oppressive, fraudulent, and malicious. First Rate is, therefore, entitled to exemplary

22  and punitive damages.

23        70.    At all times herein mentioned, the Zurich Counter-Defendants, and

24  each of them, were the agents, servants, and employees of each of the other Zurich

25  Counter-Defendants herein, and were acting within the course and scope of said

26  agency and employment with the permission and consent of the other Zurich

27  Counter-Defendants and each of them. Zurich Counter-Defendants are thus

28  vicariously liable for the acts of each of the other Zurich Counter-Defendants.

71.     First Rate further alleges that the Zurich Counter-Defendants at all times acted through their officers, directors, employees, and agents, and that they had advance knowledge of the damage being caused to First Rate and that they approved, ordered, instructed, supervised and controlled the conduct of their officers, directors, employees, and agents such as to constitute a ratification of the conduct of said officers, directors, employees, and agents.  Accordingly, pursuant to the doctrine of respondeat superior, Counter-Defendants are liable for punitive damages as prayed for herein.

## THIRD CAUSE OF ACTION
**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Against All Counter-Defendants)**

72.     First Rate incorporates by reference each and every allegation contained in paragraphs 1 through 71, above, as though fully set forth herein.

73.     The covenant of good faith and fair dealing is implied by law in every contract to protect each party's right to receive the benefits of the contract.  As a result of engaging in the conduct set forth in this counter-claim, Counter-Defendants denied First Rate the benefits of the Policies and thus, breached the implied covenant of good faith and fair dealing by failing to properly apply the rating plans and schedule modification as alleged herein; by refusing to complete the payroll audit, failing to make a good faith effort to complete the payroll audit, falsely reporting First Rate to the WCIRB as uncooperative, failing to notify and warn First Rate concerning the payroll audit and reports to the WCIRB as required by regulation, the 2014 policy, and Zurich's own procedures.

74.     Each of Counter-Defendants' alleged acts caused First Rate damages by increasing First Rate' Ex-Mod's and workers' compensation insurance premiums to amounts higher than they should be but for Counter-Defendants' acts, for which the Counter-Defendants are jointly and severally liable.

75.     First Rate' damages also include all attorneys', experts' and

1    consultants' fees, expenses and costs incurred by First Rate to pursue and obtain the

2    benefits under the Policies pursuant to the doctrine set forth in *Brandt v. Superior*

3    *Court* (1995) 37 Cal.3d 813.

4         76.    The aforementioned conduct of Counter-Defendants' was willful,

5    oppressive, fraudulent, and malicious. First Rate is, therefore, entitled to exemplary

6    and punitive damages.

7         77.    At all times herein mentioned, Counter-Defendants, and each of them,

8    were the agents, servants, and employees of each of the other Counter-Defendants

9    herein, and were acting within the course and scope of said agency and employment

10   with the permission and consent of the other Counter-Defendants and each of them.

11   Counter-Defendants are thus vicariously liable for the acts of each of the other

12   Counter-Defendants.

13        78.    First Rate further alleges that Counter-Defendants at all times acted

14   through their officers, directors, employees, and agents, and that they had advance

15   knowledge of the damage being caused to First Rate and that they approved,

16   ordered, instructed, supervised and controlled the conduct of their officers, directors,

17   employees, and agents such as to constitute a ratification of the conduct of said

18   officers, directors, employees, and agents.  Accordingly, pursuant to the doctrine of

19   respondeat superior, Counter-Defendants are liable for punitive damages as prayed

20   for herein.

21                        **FOURTH CAUSE OF ACTION**

22              **(Negligence, Against All Counter-Defendants)**

23        79.    First Rate incorporates by reference each and every allegation

24   contained in paragraphs 1 through 78, above, as though fully set forth herein.

25        80.    The Counter-Defendants and each of them owed First Rate a duty to

26   properly administer the workers' compensation insurance that First Rate was

27   purchased from Counter-Defendants.  That includes the Counter-Defendants' duty

28   to follow State insurance laws and regulations, including Zurich and Zurich NA's

1    rate filings and schedule modifications.

2         81.    As a result of engaging in the conduct set forth in this counter-claim,

3    Counter-Defendants breached their duties to First Rate for which they are jointly

4    and severally liable.

5         82.    As a direct and proximate result of the Counter-Defendants acts First

6    Rate suffered injury and was damaged as alleged herein.

7         83.    The aforementioned conduct of Counter-Defendants' was willful,

8    oppressive, fraudulent, and malicious. First Rate is, therefore, entitled to exemplary

9    and punitive damages.

10        84.    At all times herein mentioned, Counter-Defendants, and each of them,

11   were the agents, servants, and employees of each of the other Counter-Defendants

12   herein, and were acting within the course and scope of said agency and employment

13   with the permission and consent of the other Counter-Defendants and each of them.

14   Counter-Defendants are thus vicariously liable for the acts of each of the other

15   Counter-Defendants.

16        85.    First Rate further alleges that Counter-Defendants at all times acted

17   through their officers, directors, employees, and agents, and that they had advance

18   knowledge of the damage being caused to First Rate and that they approved,

19   ordered, instructed, supervised and controlled the conduct of their officers, directors,

20   employees, and agents such as to constitute a ratification of the conduct of said

21   officers, directors, employees, and agents.  Accordingly, pursuant to the doctrine of

22   respondeat superior, Counter-Defendants are liable for punitive damages as prayed

23   for herein.

## FIFTH CAUSE OF ACTION

### (Unfair Business Practices in Violation of *Business & Professions* Code Sections 17200, *Et Seq.* Against All Counter-Defendants)

26        86.    First Rate incorporates by reference each and every allegation

27   contained in paragraphs 1 through 85, above, as though fully set forth herein.

87.     Counter-Defendants' conduct described herein, include its unlawful and discriminatory policies waged against First Rate to extract a higher premium in violation of Zurich's rate filings, constitute unfair and unlawful business practices as defined by California Business and Professions Code section 17200, *et seq*.

88.     As a direct and proximate result of Counter-Defendants' unfair and unlawful practices, as alleged herein above, First Rate has been damages in an amount to be proven at trial.

89.     Pursuant to California Business and Professions Code section 17203, *et seq.*, First Rate seeks an injunction requiring Counter-Defendants to follow Zurich's rate filings when assigning insureds to one of Zurich NA's four carriers and when making a Schedule Rating determination.  First Rate also seeks restitution of the money that was diverted from First Rate under California Business and Professions Code section 17202, *et seq*.  First Rate further seeks any and all further relief available under California Business and Professions Code section 17200, *et seq.*

**WHEREFORE, FIRST RATE PRAYS FOR JUDGMENT, AS FOLLOWS:**
<u>**ON THE FIRST CAUSE OF ACTION**</u>

1.     For general and special damages in a sum to be proven at trial with pre-judgment and post-judgment interest thereon at the maximum rate permitted by law;

<u>**ON THE SECOND CAUSE OF ACTION**</u>

1.     For general and special damages in a sum to be proven at trial with pre-judgment and post-judgment interest thereon at the maximum rate permitted by law;

2.     For punitive and exemplary damages in an amount appropriate to punish or set an example of Counter-Defendants;

<u>**ON THE THIRD CAUSE OF ACTION**</u>

1.     For general and special damages in a sum to be proven at trial with pre-judgment and post-judgment interest thereon at the maximum rate permitted by law;

2.     For recovery of all attorneys', experts' and consultants' fees, costs and

expenses incurred to pursue and obtain the benefits of the WC Policies pursuant to the doctrine set forth in Brandt v. Superior Court (1995) 37 Cal.3d 813;

### ON THE FOURTH CAUSE OF ACTION

1.      For general and special damages in a sum to be proven at trial with pre-judgment and post-judgment interest thereon at the maximum rate permitted by law;

2.      For punitive and exemplary damages in an amount appropriate to punish or set an example of Counter-Defendants;

### ON THE FIFTH CAUSE OF ACTION

1.      For a preliminary and permanent order enjoining Counter-Defendants' conduct;

2.      For restitution and disgorgement of unjust enrichment, plus interest;

3.      For recovery of all attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

### ON ALL CAUSES OF ACTION

1.      For all costs incurred by First Rate to date and to be incurred by First Rate hereafter in connection with this action; and

2.      For such other and further relief as the court deems just and proper.

Dated: April 6, 2018            ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP


                                By: /s/ Joseph C Gjonola
                                    Nicholas P. Roxborough
                                    David R. Ginsburg
                                    Joseph C. Gjonola
                                    Attorneys for Defendant and Counterclaimant
                                    First Rate Staffing Corporation

1                                        **Demand for Jury**

2            Defendant First Rate Staffing Corporation demands trial by jury for all triable

3  issues in this action.

4

5  Dated: April 6, 2018                ROXBOROUGH, POMERANCE, NYE &
                                            ADREANI, LLP

6

7                              By: */s/ Joseph C Gjonola*

8                                 Nicholas P. Roxborough
                                 David R. Ginsburg

9                                 Joseph C. Gjonola
                              Attorneys for Defendant and Counterclaimant

10                             First Rate Staffing Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

## Joseph C. Gjonola

| | |
|---|---|
| **From:** | Lincoln Horton <lhorton@hortonvillagelaw.com> |
| **Sent:** | Tuesday, April 03, 2018 5:49 PM |
| **To:** | Joseph C. Gjonola; drg@rpnalaw.com |
| **Subject:** | Re: Zurich v. First Rate Staffing |
| **Attachments:** | image001.gif |

Joe,

Zurich is not agreeable to stipulate to allow leave for filing an amended counterclaim.

Zurich is opposed to the filing of an amended counterclaim at this late juncture.

Regards,

Lincoln

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged. The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

**From:** "Joseph C. Gjonola" <jcg@rpnalaw.com>
**Date:** Tuesday, April 3, 2018 at 12:07 PM
**To:** Lincoln Horton <lhorton@hortonvillagelaw.com>, "drg@rpnalaw.com" <drg@rpnalaw.com>
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
Attached is a stipulation re First Rate's second amended counterclaim. Tomorrow I am going to file a motion to continue the trial. I would like to include this stipulation to file the second amended counterclaim, and avoid having to also file a motion for leave to amend the counter-claim. I believe First Rate has solid grounds for an amendment based on the newly discovered facts and parties as alleged therein. I would very much appreciate your agreement in this regard. Because I will be filing this stipulation, I just need your approval to put your electronic signature on the document.
Please let me know asap so that I can prepare tomorrow's pleadings accordingly.
Thank you,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA
91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

---

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Monday, April 02, 2018 3:39 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
I hope you had a nice holiday weekend.  I am following up on my email of last Friday, below.  I can send over a formal stipulation for your signature tomorrow.
Thank you,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA
91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

---

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Friday, March 30, 2018 5:33 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
Attached is First Rate's Proposed Second Amended Counter-Claim.  It includes the additional claims that previously discussed, and addition of World Wide.  We have also added an additional Zurich party, but that may be more of a change in form than substance.  You will have to tell me.  Please let us know at your earliest convenience whether you will stipulate to the amendment.  We intend to seek a trial continuance by way of motion next week.  The amended counter claim would necessitate a continuance, and if Zurich decides not to stipulate to the amendment, we would request leave to amend along with our motion for a continuance.
Happy Easter and Passover,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Lincoln Horton [mailto:lhorton@hortonvillagelaw.com]
**Sent:** Saturday, March 24, 2018 9:40 PM
**To:** Joseph C. Gjonola; drg@rpnalaw.com
**Subject:** Zurich v. First Rate Staffing

Joe and David,

Please find the attached discovery and notices of deposition.

Regards,

Lincoln

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

# EXHIBIT 3

## Joseph C. Gjonola

| | |
|---|---|
| **From:** | Lincoln Horton <lhorton@hortonvillagelaw.com> |
| **Sent:** | Tuesday, April 03, 2018 5:45 PM |
| **To:** | Joseph C. Gjonola; drg@rpnalaw.com |
| **Subject:** | Re: Notice of Ex Parte Motion For Leave To Amend, and Motion To Continue The Trial |
| **Attachments:** | image001.gif |

Joe,

Yes.  We are opposing the ex parte application.

Regards,

Lincoln

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

**From:** "Joseph C. Gjonola" <jcg@rpnalaw.com>
**Date:** Tuesday, April 3, 2018 at 4:50 PM
**To:** Lincoln Horton <lhorton@hortonvillagelaw.com>, "drg@rpnalaw.com" <drg@rpnalaw.com>
**Subject:** RE: Notice of Ex Parte Motion For Leave To Amend, and Motion To Continue The Trial

Lincoln,
I was reminded to include the following notice: If Zurich chooses to oppose the ex parte motion, you will have 48 hours from the date of delivery of the moving papers to file and serve Zurich's opposition papers.
Thank you,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
**web | vCard | bio |** linkedin

Note: The information contained in this email message is confidential information intended

1

only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Tuesday, April 03, 2018 4:41 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** Notice of Ex Parte Motion For Leave To Amend, and Motion To Continue The Trial

Lincoln,
This email is your notice of First Rate Staffing's (FRS's) intention to move ex parte on Wednesday, April 4, 2018 for leave to amend its answer and counterclaim. This will be coupled with a Motion To Continue The Final Pretrial Conference And Trial. An ex parte application is necessary due to the short timeframe until the Expert Report deadline of April 16, 2018 and because FRS discovered facts, parties, and counterclaims that it was unaware of until the discovery that it diligently conducted over the past 30 days.

Please acknowledge your acceptance of this notice and inform me whether you intend to oppose the motion, so that we may inform the Court as required with an ex parte motion. If you do not intend to oppose, then please inform me whether you will stipulate to the continuance and to the Second Amended Answer and Counterclaim that I sent you on March 30, 2018.
With kind regards,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Tuesday, April 03, 2018 12:07 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
Attached is a stipulation re First Rate's second amended counterclaim. Tomorrow I am going to file a motion to continue the trial. I would like to include this stipulation to file the second amended counterclaim, and avoid having to also file a motion for leave to amend the counter-claim. I believe First Rate has solid grounds for an amendment based on the newly discovered facts and parties as alleged therein. I would very much appreciate your agreement in this regard. Because I will be filing this stipulation, I just need your approval to put your electronic signature on the document.
Please let me know asap so that I can prepare tomorrow's pleadings accordingly.
Thank you,

Joe



**Joseph C. Gjonola, Esq. | Partner**
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
**web | vCard | bio** | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Monday, April 02, 2018 3:39 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
I hope you had a nice holiday weekend.  I am following up on my email of last Friday, below.  I can send over a formal stipulation for your signature tomorrow.
Thank you,
Joe



**Joseph C. Gjonola, Esq. | Partner**
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
**web | vCard | bio** | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Joseph C. Gjonola [mailto:jcg@rpnalaw.com]
**Sent:** Friday, March 30, 2018 5:33 PM
**To:** 'Lincoln Horton'; 'drg@rpnalaw.com'
**Subject:** RE: Zurich v. First Rate Staffing

Lincoln,
Attached is First Rate's Proposed Second Amended Counter-Claim.  It includes the additional claims that previously discussed, and addition of World Wide.  We have also added an additional Zurich party, but that may be more of a change in form than substance.  You will have to tell me.  Please let us know at your earliest convenience whether you will stipulate to the amendment.  We intend to seek a trial continuance by way of motion next week.  The amended counter claim would necessitate a continuance, and if Zurich decides not to stipulate to the amendment, we would request leave to amend along with our motion for a continuance.
Happy Easter and Passover,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9999
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

---

**From:** Lincoln Horton [mailto:lhorton@hortonvillagelaw.com]
**Sent:** Saturday, March 24, 2018 9:40 PM
**To:** Joseph C. Gjonola; drg@rpnalaw.com
**Subject:** Zurich v. First Rate Staffing

Joe and David,

Please find the attached discovery and notices of deposition.

Regards,

Lincoln

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV17-4864-CAS(KSx) | | Date | October 30, 2017 |
|---|---|---|---|---|
| Title | *Zurich American Insurance Company of Illinois v. First Rate Staffing Corporation, et al.* | | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Connie Lee | Lisa Gonzalez | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Lincoln Horton | David Carman |

**Proceedings:**       SCHEDULING CONFERENCE

Hearing held and counsel are present.   The Court confers with counsel and schedules the following dates:

Request for leave to file amended pleadings or to add parties: <u>February 16, 2018;</u>
Settlement Completion Cutoff: <u>April 16, 2018;</u>
Factual Discovery Cut-off: <u>April 30, 2018;</u>
Last Day to File Motions: <u>May 4, 2018;</u>
Exchange of Expert Reports Cut-off: <u>February 16, 2018;</u>
Exchange of Rebuttal Reports Cut-off: <u>March 2, 2018;</u>
Expert Discovery Cut-off: <u>April 30, 2018 ;</u>
Status Conference re: Settlement **(11:00 A.M.)**: **<u>April 30, 2018</u>**;
Pretrial Conference/Hearing on Motions in Limine **(11:00 A.M.)**: **<u>July 2, 2018</u>**; and
JuryTrial **(9:30 A.M.)**: **<u>August 7, 2018 .</u>**

Motions in limine shall be noticed for the same date and time of the Pretrial Conference, and filed 28 days prior thereto.  Motions in limine/oppositions shall not exceed five (5) pages in length and no replies will be accepted.

The Court orders the parties to go before the assigned Magistrate Judge for settlement purposes.  Counsel shall contact Judge Stevenson's Courtroom Deputy Clerk regarding availability, forthwith.

| | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | CL | |

cc: ADR

# EXHIBIT 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA  – WEST DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>          Plaintiff,<br><br>          v.<br><br>FIRST RATE STAFFING CORPORATION and DOES 1 to 100, inclusive,<br><br>          Defendants<br><br>AND RELATED COUNTERCLAIM. | Case No.  2:17-cv-4864-CAS(KSx)<br><br>**ORDER ON STIPULATION TO CONTINUE CERTAIN SCHEDULING ORDER DATES**<br><br>Judge: Christina A. Snyder<br>Ctrm:  8D<br><br>Complaint Filed:  July 1, 2017<br>Trial: August 7, 2018 |

The Court having considered the Joint Stipulation of Plaintiff and Counter-Defendant ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS ("Zurich") and Defendant and Counterclaimant FIRST RATE STAFFING CORPORATION ("First Rate") for continuance of certain Scheduling Order dates, and good cause appearing therefore, the Court hereby orders the following:

1. The Initial Expert Designation and Exchange of Expert Reports is continued from February 16, 2018 to April 16, 2018.  Concurrent with providing the Initial Expert Designation and Report, the parties will provide available deposition dates for their respective experts.

2. The Rebuttal Expert Designation and Rebuttal Report is continued from March 2, 2018 to April 30, 2018.  Concurrent with providing the Rebuttal Expert Designation

1   and/or Report the parties shall provide available deposition dates for any rebuttal experts.

2        3.  The Expert Discovery Cut-off is continued from April 30, 2018 to May 30,

3   2018.

4        4.  The Last Day to File Motions is continued from May 4, 2018 to June 1, 2018.

5        5.  All other dates set forth in the Court's Scheduling Order, including the August

6   7, 2018 trial date, remain the same.

7        **IT IS SO ORDERED.**

8

9   DATED:  January 26, 2018                    UNITED STATES DISTRICT COURT

10

11

12                                    By: _____
                                          HON. CHRISTINA A SNYDER
13                                        DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

## Joseph C. Gjonola

| | |
|---|---|
| **From:** | Lincoln Horton <lhorton@hortonvillagelaw.com> |
| **Sent:** | Wednesday, December 27, 2017 2:39 PM |
| **To:** | Joseph Gjonola; David A. Carman |
| **Cc:** | drg@rpnalaw.com |
| **Subject:** | Re: Zurich American Insurance Company of Illinois v. First Rate Staffing Corporation, et al., Case No. 2:17-cv-4864-CAS-KS pending in the United States District Court for the Central District of California -- West Division |

Joe,

My client has been out of the office for the holidays, so I have not had the opportunity to speak with her, yet.  I will let you know.

Per our call last week, I want to take the depositions of each of your clients who you expect to testify at trial about any aspect of this case.  I know you met with your clients last week.  Were you able to identify who at First Rate has knowledge about the issues alleged in the complaint and counterclaim?  If so, please let me know who has pertinent knowledge, what their general areas of knowledge are, and when they are available for deposition in January.

Thanks,

Lincoln


Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.


**From:** Joseph Gjonola <jcg@rpnalaw.com>
**Date:** Wednesday, December 27, 2017 at 11:21 AM
**To:** Lincoln Horton <lhorton@hortonvillagelaw.com>, "David A. Carman" <dac@rpnalaw.com>
**Cc:** "drg@rpnalaw.com" <drg@rpnalaw.com>
**Subject:** Re: Zurich American Insurance Company of Illinois v. First Rate Staffing Corporation, et al., Case No. 2:17-cv-4864-CAS-KS pending in the United States District Court for the Central District of California -- West Division

Lincoln,
I hope you had a nice Christmas weekend. I am following up in my email below.

Thank you,
Joe


On Dec 21, 2017, at 4:50 PM, Joseph C. Gjonola <jcg@rpnalaw.com> wrote:

Lincoln,
Nice to meet you yesterday by telephone.  To follow up, have you had a chance to discuss with your client the idea of scheduling a settlement conference with the Magistrate in February, and continuing the expert report date by 60 days?  As we discussed, that would allow us all to focus our resources on reaching a settlement rather than preparing experts for trial.  I retrieved the Magistrate's availability for February, and the only dates that are also available for us are February 22 and 28.   Please see if either of those work for Zurich.  If not we can probably find a date in early March, though it will start to work against our goal because we can delay the expert reports just so long without moving the trial date.
Finally, I would like to find some dates in the last week of January to depose Joseph Pereira and Ms. Totsky, assuming that she is the one who communicated with the WCIRB.  If it was Carol McArdle then I would need to depose her as well.  I don't anticipate those going very long.
Thank you,
Joe

**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
**web | vCard | bio | linkedin**

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999


**From:** Lincoln Horton [mailto:lhorton@hortonvillagelaw.com]
**Sent:** Tuesday, December 19, 2017 9:44 AM
**To:** David A. Carman
**Cc:** 'Joseph C. Gjonola'
**Subject:** Re: Zurich American Insurance Company of Illinois v. First Rate Staffing Corporation, et al., Case No. 2:17-cv-4864-CAS-KS pending in the United States District Court for the Central District of California -- West Division
**Importance:** High

David,

3 pm tomorrow works for me for a call.

Thanks,

Lincoln

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181

Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

**From:** "David A. Carman" <dac@rpnalaw.com>
**Date:** Monday, December 18, 2017 at 11:00 AM
**To:** Lincoln Horton <lhorton@hortonvillagelaw.com>
**Cc:** "'Joseph C. Gjonola'" <jcg@rpnalaw.com>
**Subject:** Zurich American Insurance Company of Illinois v. First Rate Staffing Corporation, et al., Case No. 2:17-cv-4864-CAS-KS pending in the United States District Court for the Central District of California -- West Division

Lincoln:

I just realized that I have a conflict with the 10:00 a.m. and the 10:30 a.m. times that I just suggested in my earlier e-mail, so please let me know whether 11:45 a.m. or 3:00 p.m. will work for you.

Thanks.

Sincerely,

David A. Carman

**David A. Carman, Esq.** | Senior Attorney
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
dac@rpnalaw.com

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

# EXHIBIT 7

**Joseph C. Gjonola**

| | |
|---|---|
| **From:** | Roxanne_Horan-Walker@cacd.uscourts.gov |
| **Sent:** | Monday, December 18, 2017 1:11 PM |
| **To:** | Joseph C. Gjonola |
| **Cc:** | roxanne_horan-walker@cacd.uscourts.gov; dac@rpnalaw.com |
| **Subject:** | Re: CV17-4864-CAS(KSx)  Mandatory Settlement Conference in Zurich v. First Rate Staffing |

Good afternoon,

The earliest dates the court is available in February are:  February 13th @ 1:00 pm, February 14th @ 11:00 a.m., or February 15th @ 1:00 p.m.

Thank you

ROXANNE HORAN WALKER | COURTROOM DEPUTY CLERK TO
MAGISTRATE JUDGE KAREN L. STEVENSON
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
312 North Spring Street, Suite G-8
Los Angeles, California 90012
Office: (213) 894.8978  Fax: (213) 894.0240
Email: roxanne_horan-walker@cacd.uscourts.gov

From:    "Joseph C. Gjonola" <jcg@rpnalaw.com>
To:      <roxanne_horan-walker@cacd.uscourts.gov>
Cc:      <dac@rpnalaw.com>
Date:    12/18/2017 12:22 PM
Subject:    CV17-4864-CAS(KSx)  Mandatory Settlement Conference in Zurich v. First Rate Staffing

Ms. Horan-Walker,
I will be heading up the above referenced case for my firm, representing defendant and counter claimant, First Rate Staffing.  Attached are the minutes of the scheduling conference before District Judge Christina A. Snyder, directing the parties to contact you regarding a mandatory settlement conference.  The settlement completion cut off is April 16, 2018.  First Rate would like to know if Magistrate Stevenson is available February 8, 9, or 12 for the mandatory settlement conference.
If not please advise regarding availability closest to the first two weeks of February.  I will be discussing dates and other litigation matters with Zurich's counsel later this week and would like to have this information so that we can have a productive meeting.
Thank you,
Joe Gjonola



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

[attachment "171031.minutes of scheduling conference (00149750xE15DC).PDF" deleted by Roxanne Horan-Walker/CACD/09/USCOURTS]

# EXHIBIT 8

## Joseph C. Gjonola

| | |
|---|---|
| **From:** | Roxanne_Horan-Walker@cacd.uscourts.gov |
| **Sent:** | Wednesday, January 10, 2018 3:26 PM |
| **To:** | Joseph C. Gjonola |
| **Cc:** | drg@rpnalaw.com; Lincoln Horton; Roxanne_Horan-Walker@cacd.uscourts.gov |
| **Subject:** | RE: CV17-4864-CAS(KSx)  Mandatory Settlement Conference in Zurich v. First Rate Staffing |

Good afternoon,

Judge Stevenson is available on the following dates in March:

March 20th @ 1:30 p.m
March 21st @ 10:00 a.m.
March 22nd @ 1:30 p.m.

Thank you

ROXANNE HORAN WALKER | COURTROOM DEPUTY CLERK TO
MAGISTRATE JUDGE KAREN L. STEVENSON
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
312 North Spring Street, Suite G-8
Los Angeles, California 90012
Office: (213) 894.8978  Fax: (213) 894.0249
Email: roxanne_horan-walker@cacd.uscourts.gov

From:      "Joseph C. Gjonola" <jcg@rpnalaw.com>
To:        <Roxanne_Horan-Walker@cacd.uscourts.gov>
Cc:        <drg@rpnalaw.com>, "Lincoln Horton" <lhorton@hortonvillagelaw.com>
Date:      01/10/2018 02:20 PM
Subject:   RE: CV17-4864-CAS(KSx)  Mandatory Settlement Conference in Zurich v. First Rate Staffing

Ms. Horan-Walker,
You are probably tired of us continually returning to you for available MSC dates, but I must one more time.  Can I ask that you respond with the Magistrate's current availability between February 14 and March 22, 2018.
Thank you very much,
Joe Gjonola (counsel for First Rate Staffing)

Opposing counsel is cc'ed above.



**Joseph C. Gjonola, Esq. | Partner**
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
web | vCard | bio | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9990

**From:** Roxanne_Horan-Walker@cacd.uscourts.gov [mailto:Roxanne_Horan-Walker@cacd.uscourts.gov]
**Sent:** Wednesday, December 20, 2017 3:01 PM
**To:** Joseph C. Gjonola
**Cc:** dac@rpnalaw.com; 'Lucy Rodriguez'; Roxanne_Horan-Walker@cacd.uscourts.gov
**Subject:** RE: CV17-4864-CAS(KSx) Mandatory Settlement Conference in Zurich v. First Rate Staffing

Good afternoon,

Here are additional dates:  February 20th @ 1:00 pm, February 21st @ 10:00 am, February 22nd @ 1:00 p.m, February 28th @ 10:00 a.m.

Thank you

ROXANNE HORAN WALKER | COURTROOM DEPUTY CLERK TO
                       | MAGISTRATE JUDGE KAREN L. STEVENSON
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
312 North Spring Street, Suite G-8
Los Angeles, California 90012
Office: (213) 894.8978  Fax: (213) 894.0249
Email: roxanne_horan-walker@cacd.uscourts.gov

# EXHIBIT 9

## Joseph C. Gjonola

| | |
|---|---|
| **From:** | Joseph C. Gjonola <jcg@rpnalaw.com> |
| **Sent:** | Thursday, March 01, 2018 10:45 AM |
| **To:** | 'Lincoln Horton' |
| **Cc:** | 'David Ginsburg' |
| **Subject:** | RE: Zurich v. First Rate Staffing Corporation - Pre-Mandatory Settlement Conference Demand - Confidential Settlement Communication |

Lincoln,
Thank you for sending us your client's offer.  We will provide you with our client's response in due course.  In the meantime, I am very concerned with the fact that we still do not have your client's documents.  As you told me on the telephone last week, you would have already produced the documents to us 4 days ago if we had kept Joseph Pereira's deposition on Monday February 26, 2018.  We moved it specifically to put some review time between receiving the documents and taking the deposition.  Then we moved it again when the documents did not arrive on Monday or Tuesday.  Zurich still did not produce them on Wednesday February 28, 2018, displaying an intent to deny us the opportunity for a meaningful review.  This is not acceptable or conducive to the purpose of expediting these depositions and going to an early mediation.  Our client quite willing and without fuse provided its documents and four witnesses at Zurich's convenience.  We appreciate all that you have done to facilitate the depositions on both sides, but your client is preventing meaningful deposition from taking place, and injuring the chance at resolving this case without a trial and heavy Court involvement.
With kind regards,
Joe



**Joseph C. Gjonola, Esq.** | Partner
5820 Canoga Avenue | Suite 250 | Woodland Hills, CA 91367
tel (818) 992-9999 | fax (818) 992-9991
jcg@rpnalaw.com
**web | vCard | bio** | linkedin

Note: The information contained in this email message is confidential information intended only for the use of the individual or entity named. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone or e-mail and delete the original e-mail. (818) 992-9999

**From:** Lincoln Horton [mailto:lhorton@hortonvillagelaw.com]
**Sent:** Wednesday, February 28, 2018 9:57 PM
**To:** Joseph C. Gjonola
**Cc:** David Ginsburg
**Subject:** Zurich v. First Rate Staffing Corporation - Pre-Mandatory Settlement Conference Demand - Confidential Settlement Communication

Counsel,

Please see the attached correspondence of today's date.

Regards,

Lincoln Horton

Lincoln Horton, Esq.
HORTON VILLAGE LAW GROUP, APC
16236 San Dieguito Drive, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Tel. 858.832.8685
lhorton@hortonvillagelaw.com
www.hortonvillagelaw.com

This electronic message transmission from Horton Village Law Group, APC contains information which may be confidential or privileged.  The information is intended solely for the use of the individuals or entities named in the recipient line(s) of the electronic transmission, unless the recipients are named in error.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited.  If you have received this electronic transmission in error, please notify us by email or call us at 858.832.8685, and immediately delete or destroy all copies of this electronic transmission.

# EXHIBIT 10

1  LINCOLN V. HORTON (SBN 165238)
   HORTON VILLAGE LAW GROUP, APC
2  lhorton@hortonvillagelaw.com
   16236 San Dieguito Road, Suite 5-24
3  P.O. Box 9181
   Rancho Santa Fe, CA 92067
4  Telephone: 858.832.8685

5  Attorneys for Plaintiff and Counter-Defendant Zurich
   American Insurance Company of Illinois
6

7

8                    UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA  – WEST DIVISION

10

11  ZURICH AMERICAN INSURANCE            Case No.  2:17-cv-4864-CAS(KSx)
    COMPANY OF ILLINOIS,
12                                       **JOINT STIPULATION FOR
                 Plaintiff,              CONTINUANCE OF CERTAIN
13                                       SCHEDULING ORDER DATES**
           v.
14
    FIRST RATE STAFFING CORPORATION
15  and DOES 1 to 100, inclusive,        Judge: Christina A. Snyder
                                         Ctrm:  8D
16               Defendants

17                                       Complaint Filed:  July 1, 2017
    AND RELATED COUNTERCLAIM.
18                                       Trial: August 7, 2018

19       Plaintiff and Counter-Defendant ZURICH AMERICAN INSURANCE

20  COMPANY OF ILLINOIS ("Zurich") and Defendant and Counterclaimant FIRST RATE

21  STAFFING CORPORATION ("First Rate") hereby submit this joint stipulation for the

22  continuance of certain Scheduling Order dates, and accompanying proposed order.

23       WHEREAS, a Scheduling Order was entered by the Court for this matter on

24  October 30, 2017 (Dckt. No. 26).

25       WHEREAS, pursuant to the Scheduling Order the parties have set a Mandatory

26  Settlement Conference ("MSC") for March 20, 2018 with Magistrate Judge Stevenson.

27       WHEREAS, counsel have meet and conferred in anticipation of the pending MSC,

28  and wish to create an environment conducive to reaching a settlement.

1      WHEREAS, all counsel agree that a trial will likely entail substantial expert

2  testimony, and that settlement will be much more likely before the parties incurring large

3  expenses to retain experts, produce reports, and take depositions.

4      WHEREAS, the parties are also cooperating to obtain focused non-expert

5  discovery to assist in the settlement process at the MSC.

6      THEREFORE, IT IS HEREBY STIPULATED, by and between all parties

7  pursuant to Local Rule 7-1, as follows:

8     1.   The Initial Expert Designation and Exchange of Expert Reports should be

9           continued from February 16, 2018 to April 16, 2018.  Concurrent with

10          providing the Initial Expert Designation and Report, the parties will provide

11          available deposition dates for their respective experts.

12    2.   The Rebuttal Expert Designation and Rebuttal Report should be continued

13          from March 2, 2018 to April 30, 2018.  Concurrent with providing the

14          Rebuttal Expert Designation and/or Report the parties shall provide

15          available deposition dates for any rebuttal experts.

16    3.   The Expert Discovery Cut-off should be continued from April 30, 2018 to

17          May 30, 2018.

18    4.   The Last Day to File Motions should be continued from May 4, 2018 to

19          June 1, 2018.

20    5.   All other dates set forth in the Court's Scheduling Order, including the

21          August 7, 2018 trial date, shall remain the same.

22    IT IS SO STIPULATED.

23  DATED:  January 24, 2018        HORTON VILLAGE LAW GROUP, APC

24

25

26                     By:  /s/ Lincoln V. Horton
                           LINCOLN V. HORTON

27                     Attorneys for Plaintiff and Counter-
                      Defendant Zurich American Insurance

28                     Company of Illinois

1

2    DATED:  January 24, 2018                    ROXBOROUGH, POMERANCE,
                                                 NYE & ANDEANI, LLP
3

4
                                        By:  /s/  Joseph Gjonola
5                                            JOSEPH GJONOLA
                                             Attorneys for Defendant and
6                                            Counterclaimant FIRST RATE
                                             STAFFING CORPORATION
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3