LINCOLN V. HORTON (SBN 165238)
HORTON VILLAGE LAW GROUP, APC
lhorton@hortonvillagelaw.com
16236 San Dieguito Road, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Telephone: 858.832.8685

Attorneys for Plaintiff and Counter-Defendant Zurich American Insurance Company of Illinois

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WEST DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>FIRST RATE STAFFING CORPORATION and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 2:17-cv-4864-CAS-KS<br><br>**ZURICH'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE APPLICATION FOR LEAVE TO AMEND COUNTERCLAIM AND CONTINUE THE TRIAL**<br><br>Judge: Hon. Christina A. Snyder<br>Ctrm: 8D<br><br>Trial:     August 7, 2018<br>Complaint: September 1, 2018 |

Plaintiff and Counter-Defendant ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS ("Zurich") hereby submits this Memorandum of Points and Authorities in Opposition to Ex Parte Application by Defendant and Counterclaimant FIRST RATE STAFFING CORPORATION ("First Rate") for Leave to Amend Answer and Counterclaim and Continue the Trial. Zurich's opposition to the ex parte application also includes the concurrently filed Declaration of Lincoln V. Horton.

**I.    INTRODUCTION**

First Rate's ex parte application should be denied because it fails to demonstrate the extraordinary/exigent circumstances required for granting ex parte relief. Instead,

First Rate's briefing demonstrates that any exigent circumstances were caused by First Rate's own delays: first, in initiating the discovery it claims warrants a continuance of trial and an amendment of the counterclaim; and then, once that discovery (the depositions of Zurich representatives completed March 5-9, 2018, generally; but per First Rate's brief, specifically, the deposition of Jim Buck on March 7, 2018) allegedly revealed the "new information" relied upon, by not bringing the appropriate noticed motion, immediately, for the relief sought.

For the same reasons, even if the Court considers First Rate's ex parte application on the merits, it should be denied. First Rate has not demonstrated that it pursued its investigation and discovery, diligently, and without "undue delay." First Rate's ex parte application does not evidence that leave to amend or a trial continuance is needed to avoid prejudice.

This case is the second between the two parties regarding workers compensation premiums for the 2014-15 policy year. The first resulted in First Rate finally agreeing in February 2017 (in the face of a July trial date, an impending expert exchange, and many depositions to complete) to submit to the payroll audit required by the policy that it had been refusing to allow since June 2015.

The instant matter was filed on July 1, 2017, after First Rate refused to pay the 1.2 million dollars owed as a result of the payroll audit. First Rate filed its initial answer, after extension, on August 31, 2017. On September 21, 2017, First Rate filed its First Amended Answer and Counterclaim.

It has now been over nine months since the complaint was filed. First Rate has had more than enough time to initiate and complete whatever discovery it needed to assert its defenses and investigate it counterclaims.

The Court's Scheduling Order was issued October 30, 2017. The Order set the last day to seek leave of court to amend the pleadings and add new parties on February 16, 2018. The expert designation and report exchange deadline was initially February 16, 2018 and expert discovery cut-off April 30, 2018.

1   The Scheduling Order put First Rate on notice that it needed to conduct whatever investigation it needed to do to bring the instant ex parte for leave to amend its counterclaim as a noticed motion by February 16, 2018.

First Rate has already requested an obtained one two months extension of the Scheduling Order deadlines for the expert exchange (until April 16, 2018) and a one month exchange of the expert discovery cut-off (until May 30, 2018). However, First Rate's counsel admits that his office did not even start working with experts in this matter until March 20, 2018 (First Rate's Gjonola Dec. ¶ 12).

First Rate's ex parte application fails to evidence any prejudice it would experience by denial of its ex parte application. It should have been working toward the extended expert exchange based on the allegations in Zurich's complaint and its counterclaim. If First Rate thinks it has discovered new claims, it can file a separate action. There is not any prejudice or good cause for the relief sought.

Since there are no exigent circumstances warranting ex parte relief, other than those created by First Rate, itself, by its lack of diligence, and no prejudice to First Rate, the ex parte application for leave to amend and to continue trial should be denied. Even if the ex parte application is considered on the merits, First Rate's lack of diligence in initiating discovery and expert work-up warrants denial of the ex parte application.

Alternatively, if leave to amend is granted by the Court, a short two-month continuance of all dates is needed to allow Zurich to investigate the new claims, and obtain expert input; as well as an accompanying order granting Zurich leave to retake the depositions of First Rate's CEO Cliff Blake and President Devon Blake regarding the new claims. Additionally, since First Rate's ex parte application does not evidence that the additional proposed parties are necessary to the litigation, that leave to amend only be granted as to the existing counter-defendant.

## II. STATEMENT OF THE CASE

This breach of contract matter arises from the failure by Defendant and Counterclaimant First Rate Staffing Corporation ("First Rate") to pay an additional

premium (after a much-delayed policy-required payroll audit) of 1.2 million dollars for its 2014-15 workers' compensation insurance policy (Declaration of Lincoln V. Horton ¶ 2).

The payroll audit is required by the insurance agreement to occur shortly after the conclusion of the policy (May 2015), but First Rate did not agree to submit to the audit until February 2017, when a prior U.S. District Court lawsuit filed by Zurich against First Rate was two months from trial. After First Rate finally agreed to the audit, and it was conducted (resulting in the additional premium due of 1.2 million), the first action was dismissed without prejudice after the judge in that matter rejected a prior stipulation submitted by the parties and said that she would not continue dates in the matter, further. It was deemed easier to just file a new complaint with the new audit amount (Declaration of Lincoln V. Horton ¶ 3).

The instant action was filed on July 1, 2018 when First Rate would not pay the 1.2 million dollars owed as a result of the payroll audit [Dckt. No. 1] (Declaration of Lincoln V. Horton ¶ 4).

First Rate's initial answer was filed (after stipulated extension) on August 31, 2017 [Dckt. No. 13].

First Rate's amended answer and counterclaim was filed September 21, 2017 [Dckt. No. 16].

The Court's Scheduling Order was issued on October 30, 2017 [Dckt. No. 26]. The Scheduling Order set deadlines for the parties to seek leave to amend the pleadings and add new parties on February 16, 2018, the expert report exchange on February 16, 2018, and percipient and expert discovery cut-offs on April 30, 2018.

Pursuant to First Rate's request, the parties stipulated to continue the expert report exchange deadline to April 16, 2018 and the expert discovery cut-off to May 30, 2018, which the Court ordered on January 26, 2018 [Dckt. No. 30]. In making the proposal, First Rate pitched that continuing dates would allow First Rate to devote the majority of its resources to trying to achieve a good faith resolution at a Mandatory Settlement

Conference (Declaration of Lincoln V. Horton ¶ 8).

Zurich responded timely and without extension to First Rate's written discovery. In fact, as to First Rate's Rule 34 request for production served with a Rule 30(b)(6) deposition notice served by mail on January 31, 2018, in order to assist First Rate's deposition preparation, Zurich provided the documents on March 1, 2018, four days before the (Monday) March 5, 2018 production deadline per code. Zurich produced all of its witnesses, and even made arrangements so that telephonic depositions could be taken of out-of-state Zurich witnesses (Declaration of Lincoln V. Horton ¶ 10).

A Mandatory Settlement Conference occurred on March 20, 2018, and was a complete waste of time, with First Rate not offering any money to resolve the matter, and instead only a mutual waiver of claims (Declaration of Lincoln V. Horton ¶ 11).

### III.     AUTHORITY

Ex Parte relief is disfavored. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-39 (1974) ("our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute").

Ex Parte applications are solely for extraordinary relief and should be used with discretion. *Mission Power Engineering v. Continental Casualty Co.,* 883 F.Supp. 488, 499 (C.D. Cal. 1995) (ex parte relief is only appropriate in circumstances of "temporal urgency such that immediate and irreparable harm will occur if there is delay in obtaining relief…").

To establish good cause to modify a scheduling order, a party must show that despite the exercise of due diligence, the party cannot meet the court's timetable. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

The decision about whether to allow an amendment to a pleading is "within the sound discretion of the court." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Among the factors that the Court may rely upon to deny a motion for leave to amend are:

"bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

## IV. ARGUMENT

### A. No Extraordinary or Exigent Circumstances Warrant Ex Parte Relief.

There is no basis to grant the relief sought by First Rate on an ex parte basis.

There are no exigent circumstances. The only event on the immediate horizon is the expert designation and exchange of reports, already continued from February 16, 2018 to April 16, 2018 pursuant to First Rate's request for a stipulation to do so.

First Rate does not state that the April 16, 2018 expert exchange deadline cannot be met in its ex parte paperwork. Instead, First Rate says that it did not start working with experts until March 20, 2018 (Gjonola Dec. ¶ 12). Whatever the reason for this delay, it shows a lack of diligence on the part of First Rate, rather than extraordinary and exigent circumstances warranting ex parte relief.

The "new" information cited by First Rate in its pleadings in its ex parte application as the basis for its requested 8-months continuance of all dates and the need for leave to amend was discovered "during depositions completed during March 5-9." (First Rate's Memorandum of Points and Authorities in Support of Ex Parte Application ("First Rate's Memo"), pp. 6-7). The only deposition testimony cited in support of First Rate's position is from the deposition of Zurich's Jim Buck taken March 7, 2018 (First Rate's Memo, pp. 6-7). After the Zurich depositions First Rate's counsel was purportedly preparing diligently for the Mandatory Settlement Conference (at which it offered no money, and only a mutual walk-away), and seems to imply that is why a noticed motion was not brought for the relief sought in the ex parte application. But that implicit excuse is at best another self-determined and self-created delay, not a justification for extraordinary relief.

The relief sought by First Rate is far reaching (amend the counterclaim, and continue trial and discovery dates by 8 months) and the briefing very voluminous. An ex parte application was not the appropriate procedural and pleading mechanism to seek this

type of non-extraordinary relief.

For the above reasons the ex parte application should be denied.

## B. First Rate's Lack of Diligence and Delay in Discovery Warrants Denial.

Whatever First Rate's strategic considerations, First Rate should not be able to use its own delays in initiating discovery and expert retention/investigation as the justification for its request to the Court to allow belated amendment of its counterclaim, and an eight-months continuance of trial and discovery deadlines. In fact, per case law, First Rate's undue delay should be the basis for denial of both the request for continuance of trial and discovery deadlines, and leave to amend.

This case was filed July 1. 2017. First Rate's initial answer was filed (after stipulated extension) on August 31, 2017. The Court's scheduling order was issued on October 30, 2017. The Scheduling Order set deadlines for the parties to seek leave to amend the pleadings and add new parties for February 16, 2018, the expert report exchange on February 16, 2018, and percipient and expert discovery cut-offs on April 30, 2018. Pursuant to First Rate's request, the parties stipulated to continue the expert report exchange deadline to April 16, 2018 and the expert discovery cut-off to May 30, 2018, which the Court ordered on January 26, 2018.

This case is 9 months old. There is no reason why First Rate could not have started discovery in earnest in the fall of 2017. In fact, given that the Scheduling Order set the last day to seek leave to amend the pleadings and add new parties for February 16, 2018, First Rate was on notice that if it needed discovery to see if it needed to do so, it needed to get started with that discovery, forthwith.

When First Rate did issue written discovery, Zurich responded without extension. Zurich produced all witnesses requested for deposition, including cooperating so that First Rate could take out of state witnesses by telephone. Zurich even produced documents requested pursuant to a Rule 34 request contained in a Rule 30(b)(6) notice served January 31, 2018, on March 1, 2018: 4 days earlier than what is required by code.

Additionally, most of the documents produced in this case, were produced by

1  Zurich to First Rate in the first case in 2016.  Therefore, First Rate had a head start on
2  discovery in this matter that most litigants do not enjoy.
3        First Rate's counsel admits that despite the above deadlines, he did not even start
4  working with experts until March 20, 2018 (Gjonola Dec. ¶12).
5        First Rate had more than enough time to do the discovery and expert work-up it
6  needed in a timely fashion.  First Rate's delay, for whatever strategic reason it may have
7  had for delaying, is not a basis to allow the relief it seeks, even if the Court were to
8  consider this matter on the merits as an ex parte, as opposed to a properly noticed motion.
9        **C.**   **There is No Prejudice to First Rate.**
10       As First Rate implicitly admits, there is no prejudice to First Rate if the Court
11 denies its ex parte application.
12       First Rate should have already retained experts to investigate and prepare reports
13 based on the allegations in Zurich's complaint and First Rate's counterclaim by the April
14 16, 2018 deadline (which was already extended for two months at First Rate's request).
15       If First Rate believes it has additional recoverable claims not already included in
16 its counterclaim, it can file such claims in another lawsuit.  Contrary to First Rate's
17 claims, this court need not decide on an ex parte basis whether the claims in a potential
18 separate lawsuit that has not been filed, stay this matter from proceeding.  Such analysis
19 will only be proper if a separate action is brought, and upon a noticed motion, allowing
20 both sides to fully brief the issue.
21       First Rate is not prejudiced and its ex parte application should be denied.
22       **D.**   **If the Court Grants Leave to Amend a Short Continuance is Needed.**
23       If despite the arguments, herein, the Court grants First Rate's ex parte application
24 for leave to amend its counterclaim, then in order to avoid prejudice to Zurich relative to
25 its defense of the new claims, there should be a short continuance of all remaining dates,
26 including the expert exchange, discovery cut-offs and trial, for two months.  Zurich needs
27 the additional time to investigate the new claims and have an expert evaluate the new
28 claims.  As part of its investigation, Zurich needs to re-take the deposition of First Rate's

CEO Cliff Blake and President Devon Galpin regarding the new claims and damages claims, and requests that as part of any order granting leave to amend, that the Court grant leave to retake the depositions of each (Declaration of Lincoln V. Horton ¶ 13).

Finally, First Rate's ex parte application does not provide evidence that the new parties identified in the proposed amended counterclaim are necessary to the litigation, and, as such, and given that we are almost two months after the Court's deadline to add new parties, if the Court grants leave to amend, it should be limited to leave to amend against the existing counter-defendant.

## V. CONCLUSION

Based on the foregoing, First Rate's ex parte should be denied. There are not extraordinary and exigent circumstances warranting ex parte relief. Even if the court were to consider the motion on the merits on an ex parte basis, First Rate's own delay in initiating discovery is not a proper basis to grant the relief requested, and, in fact, is the reason to deny the relief sought. There is no prejudice to First Rate in denying the motion. However, if the Court grants First Rate leave to amend based on its ex parte application, there should be a short, two-month continuance of all dates, so that Zurich may adequately investigate and defend the new counterclaim allegations, including an order granting Zurich leave to retake the depositions of First Rate's CEO Cliff Blake and President Devon Galpin regarding the new claims and damages, and the counterclaim should be limited to the existing counter-defendant.

DATED: April 9, 2018　　　　　　　　　　　HORTON VILLAGE LAW GROUP, APC

By: /s/ LVH
LINCOLN V. HORTON
Attorneys for Plaintiff and Counter-Defendant ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS